CHUTE & al. Ex'rs, versus PATTEE & als.

Where the holder of a promissory note, for a valuable consideration, without the knowledge of the sureties, contracts with the principal, to enlarge the time of payment beyond that fixed in the note, the sureties are no longer liable thereon.

And the agreement of the principal to pay interest on such note, for a specified time after it became due, is *a sufficient consideration* for a promise of delay.

ON REPORT from *Nisi Prius*, WELLS, J., presiding.

ASSUMPSIT, on a promissory note, dated May 8, 1846, for $500, payable to Benjamin Webber with interest, in one year from the seventh day of June following, signed by Pattee as principal, and the other defendants as sureties. On the back of the note was indorsed "June 7, 1847, received the interest. June 8, 1848, received the interest."

The note was read to the jury. Pattee made no defence. But the sureties alleged that they were discharged in conse-

quence of an agreement, for a sufficient consideration, between Webber, the plaintiff's testator, and the principal, after the note was due, for a promise of delay of payment, without their consent.

Evidence was produced that on June 7, 1846, Pattee assigned to Webber a mortgage and notes as collateral security for notes to the amount of $700, given to Webber by him on May 8, 1846, and on the day of the assignment, Webber made a written agreement to reässign said mortgage upon the payment of the notes it was assigned to secure.

On the back of this agreement, on June 7, 1847, Webber signed this memorandum. — "Whereas Moses Pattee has paid the interest on the within up to date, and also on a note for $500, against the said Pattee, David Hammons, N. K. Farrington and J. S. Farrington, and has agreed to pay interest on the same for one year more, I hereby extend said obligation and the payment of said note for one year more from this date."

David Hastings, called by defendant, testified, that he was present when said memorandum was written by Hammons at the request of Webber, that he said he had seen Pattee and had made an arrangement with him to extend the time of payment of the notes for a year, that Hammons objected strongly to the extension. At the end of that year Webber called again at the office, while Hammons was absent at Washington, and said he had made another extension with Pattee, on the same terms as the first one. He wanted me to find the first paper and write a new extension like the first one. I could not find it and did not write it, though he called several times for that paper. During the two years of the extension Pattee was somewhat embarrassed, but debts could be collected of him. Since, his debts are not good.

The case was thereupon taken from the jury, with the agreement that the Court should render judgment against the principal defendant for debt and costs, and that on the testimony and evidence in the case, or so much as may be

legally admissible, judgment may be rendered against such of the sureties, if any, with said Pattee, as are justly and legally liable; that the Court might draw such inferences from the evidence as a jury might; and that if the Court should be of opinion, that either or all the sureties are not liable, the plaintiffs are to discontinue as to them, and they to have judgment for one bill of cost only.

*Gerry*, for the plaintiff, contended, that there was no consideration for the alleged agreement between Webber and Pattee for Webber to give time of payment. There is no pretence that Pattee paid any thing, or promised to pay any thing for the alleged promise of extension, except what he was legally bound to pay by the terms of the notes.

The notes transferred by Pattee to Webber, with the mortgage assigned were *on interest,* and it will be observed that the note in suit was on interest. Therefore nothing was *paid* or *promised* for the promise of extension. That promise of extension was merely gratuitous and without sufficient consideration. Chitty on Con. 6th Am. ed. 51 and 52; *Hall* v. *Constat,* 2 Hall, 185; *Pebodie* v. *Ring,* 12 Johns. 426; *Russell* v. *Buck,* Vermont, 166; *Pomroy* v. *Slade,* 16 Vermont, 220.

*D. Hammons* and *G. H. Shepley,* for defendants.

1. The payee of the note by giving time to the principal debtor discharged the sureties. Pattee had no right to pay the money with interest then accrued, at any time before the expiration of the additional year, for he had agreed to keep the money " and pay interest on the same for one year more." This was a new, separate and distinct contract on the part of Pattee from any existing in the note before, and therefore formed *of itself* a consideration for the extension of the time by Webber. The payee received a benefit in having his money invested for a year, and determined to keep it as it was, against the remonstrance of the surety.

Whenever, without the consent of the surety, the creditor extends the time of payment to the principal by such an agreement as could be enforced at law or in equity, the

surety is discharged. 13 Maine, 208; *Leavitt* v. *Savage*, 16 Maine, 72; 5 Greenl. 130.

2. The agreement for the extension of time to the principal has been executed, and has actually resulted to the injury of the surety, the principal in the meantime having become insolvent. This discharges the surety.

HOWARD, J. — It is agreed that the plaintiff may take judgment against Pattee, the principal defendant, for the amount of the note in suit, with interest and costs. But the other defendants, who are sureties upon the note, claim to have been discharged by the operation of an agreement made between the testator and the principal, without their assent. They, only, make defence.

It is proved, that after the note became payable, the testator agreed in writing with the principal, to extend the time of payment "for one year more," upon the agreement of the latter to pay interest upon this, and other notes, for that period; that the extension was made, and the interest paid at the expiration, according to the agreements; and there is no proof that either of the sureties assented to the arrangement.

The agreement of the principal to pay interest for a specified time, after the note became due, furnished a sufficient consideration for the promise to delay. Both agreements were valid, and binding upon the parties respectively, and enabled each to accomplish what he appears to have considered a desirable purpose; — a further investment for a definite period for the creditor, and an extension of credit for the same time for the debtor. The legal effect of the agreements was to disable the former from enforcing collection, and the latter from making payment of the note, until the expiration of the year stipulated; and to alter the contract, and change the responsibility of the sureties, without their consent. *Rees* v. *Berrington*, 2 Ves. 540; *Bank of the United States* v. *Hatch*, 6 Peters, 259; *Gahn* v. *Niemcewiez*, 11 Wend. 317; *Leavitt* v. *Savage*, 16 Maine, 72; *Bailey* v. *Adams*, 10 N. H. 335.

This case falls within the familiar rule of law, that where the holder of a promissory note makes a binding agreement with the principal to enlarge the time of payment beyond that fixed by the note, without the consent of the surety, the latter will be discharged. *Lime Rock Bank* v. *Mallett*, 34 Maine, 547; *Greeley* v. *Dow*, 2 Met. 176, and cases before cited.

According to the agreement of the parties, and under the provisions of the R. S., c. 115, § 11, the plaintiffs have leave to discontinue as to the sureties, on payment of costs, and to amend and take judgment against the principal for debt and costs.

SHEPLEY, C. J., and RICE, HATHAWAY and CUTTING, J. J., concurred.