CASE 27—PETITION EQUITY—APRIL 27.

# Mason, &c., vs. Mason, &c.

5bu187
f130 1472

APPEAL FROM MADISON CIRCUIT COURT.

1. SECOND APPEAL IN SAME CASE BETWEEN SAME PARTIES.—All the errors and irregularities appearing in the original record, and which could have been corrected by the first appeal, must, on the second appeal, be regarded as settled and adjudicated, and can afford neither a cause for a review, or for a rehearing in the court below, nor for correction on the second appeal in the Court of Appeals.

2. The judgment of the circuit court having been affirmed by the Court of Appeals, and a petition for a new trial having been dismissed by the circuit court, on the appeal from the judgment of dismission, the Court of Appeals will only investigate such of the assigned causes for a rehearing as were not necessarily precluded by the former adjudication and affirmance.

3. After objecting to the filing of an answer, because verified before the clerk of a circuit court in Missouri, the plaintiffs offered to reply to it, and filed an amended petition, and also waived any objections to a subsequent answer of the same party. Any one of these acts should have been deemed a waiver of objections to the first answer; and especially, as the exception was not taken to it until the submission of the case for trial.

4. A reply to an answer which was not a cross-petition, and which did not set up a counter-claim or set-off, was properly rejected.

5. On a petition for a review or a rehearing, the evidence offered being entirely parol and cumulative to that presented in the original case, involving the credibility of the conflicting recollection, character, opportunity, &c., of those who testified—this was insufficient, in every aspect of the case, to authorize a review or rehearing.

6. A defense, of which the defendants must have had knowledge, if true, which was not relied on or presented in the first trial, cannot be made available on petition for a review or a rehearing—the alleged discovery of evidence to sustain such a defense will not authorize a re-trial.

Mason, &c., vs. Mason, &c.

7. The adverse parties to a judgment in favor of an infant, whose claim was prosecuted to judgment by a guardian *ad litem*, cannot object to the judgment against them, because the summons was not served on the infant, who was a co-defendant with them in the original suit, and was made a defendant by them on their petition for a review and rehearing.

8. If it was technically erroneous to permit a cross-suit by an infant, by his guardian *ad litem*, which is by no means certain, after issue and judgment in his behalf, it is too late to object, because the infant was not served with a summons.

9. The suspension of execution on a judgment in favor of an infant, until statutory guardian is appointed, did not injure the party against whom the judgment was rendered, as he could pay the money into court.

R. M. & Wm. O. Bradley,                    For Appellants,

CITED—

3 *J. J. Mar.*, 628 ; 2 *B. Mon.*, 359.

6 *B. Mon.*, 300 ; 8 *B. Mon.*, 632.

*Civil Code*, secs. 573, 81, 579, 118, 30, 53, 153, 610, 369, 420.

*Revised Statutes*, 1 *Stant.*, 321, sec. 1, art. 12, chap. 27 ; sec. 2, art. 3, chap. 17; 1 *Stant.*, 249, secs. 3, 4, p. 248.

5 *Dana*, 197 ; *Talbott vs. Todd.*

2 *Bibb*, 33 ; *Mahan vs. Jane.*

2 *Met.*, 380 ; *Corbin, &c., vs. Commonwealth.*

2 *Duvall*, 174 ; *Fritz vs. Tudor.*

9 *Barb.*, 219.

5 *Monroe*, 413 ; *Brown vs. Beauchamp.*

*Coke's Lit.*, 368 ; 2 *Inst.*, 207, 208, 212, 213.

1 *Saund.*, 301; 1 *Hawk.*, chaps. 83, 84, 85.

2 *Parsons on Contracts*, 262, subdiv. 6, chap. 3.

2 *B. Mon.*, 454, 457–8–9 ; *Schaeffer vs. Gates.*

*Myers' Sup.*, 694, sec. 2; *Ib.*, 137, 97.

2 *Sill*, 103 ; 3 *Sev.*, 430.

*Tomlin's Law Dic.*, title " Judgment."

1 *Met.*, 67 ; *Raymond, &c., vs. Smith.*

*Stat. Law*, 329.

1 *J. J. Mar.*, 114; *Commonwealth vs. Chambers.*

*Littell's S. C.*, 121; *Luckett vs. Gwathmey.*

2 *Met.*, 291; *Vertrees vs. Shean.*

1 *Bush*, 335; *Sandford vs. Farmers' Bank, &c.*

*Rev. Stat., sec.* 1, *art.* 15, *chap.* 36, 1 *Stant.*, 488.

2 *Met.*, 197; *Forrest vs. Phillips, &c.*

2 *Met.*, 433; *Geoghegan, &c., vs. Ditto, &c.*

12 *B. Mon.*, 232; *Isaacs vs. Gearheart.*

2 *Duvall*, 81; *Jones & Kelly vs. Commonwealth.*

17 *B. Mon.*, 20; *Payne vs. Vandever.*

3 *Met.*, 542; *Ashby vs. Woolfolk.*

3 *Dana*, 9; *Brooks' adm'r vs. Love.*

2 *Bush*, 559; *Commonwealth & Wakefield vs. Thompson, &c.*

1 *J. J. Mar.*, 377; *Ballard vs. Davis.*

7 *Mon.*, 548; *Durret vs. Whiting.*

4 *Mon.*, 118; *Jarman vs. Davis.*

4 *Littell*, 192–3; *Farmer vs. Samuel.*

4 *Littell*, 302; *Terrill vs. Arnold.*

3 *Mar.*, 180; *Griffith vs. Depew.*

5 *Mon.*, 249; 1 *Mar.*, 106, 122.

1 *J. J. Mar.*, 525–6; *Honore vs. Colmesnil.*


HUSTON & GOODLOE and

ED. W. TURNER & W. B. SMITH,        For Appellees,
                CITED—

*Hardin's R.*, 342, 351; 3 *Mon.*, 121.

6 *B. Mon.*, 340; 11 *B. Mon.*, 589; 4 *Mon.*, 146.

3 *Mon.*, 400; *Finley vs. Nancy Tyler.*

1 *Bibb*, 455; *McCracken's heirs vs. Finley.*

1 *Met.*, 18; *Webber, &c., vs. Webber.*

1 *Met.*, 407; *Alexander vs. Tevis.*

4 *J. J. Mar.*, 417, 500.

Mason, &c., vs. Mason, &c.

11 *B. Mon.*, 220; *Brunk vs. Means.*
1 *Met.*, 224; *Downey vs. Wickliffe.*
5 *J. J. Mar.*, 610; 3 *J. J. Mar.*, 390.
1 *Met.*, 602; *Brown vs. Bowman.*

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

John Mason, deceased, the father of these appellants, and the appellee, Wm. Mason, and grandfather to appellee, C. M. Todd, in the year of 1856 conveyed his land, in several tracts, to appellants, upon condition, as asserted by appellees, that they would pay to Wm. Mason and Mrs. Todd, mother of appellee, C. M. Todd, an equal *pro rata* child's portion, to equalize them for said advancement at their father's death.

John Mason having died in the year 1864, and the appellants failing and refusing to carry out said contract, Madison Todd and wife conveyed their interest to their minor son, the appellee, Calvin M. Todd; and Wm. Mason brought suit in the Madison circuit court to compel the appellants' compliance with said contract. John Mason married subsequently to said contract and conveyance, and had three children by this last wife, to whom he left all his property possessed at his death.

After this litigation had been protracted for several years, and various amended pleadings had been filed, it was finally adjudicated at the March term, 1867, of said court, by which appellees recovered judgment against appellants, which the latter brought to this court by appeal, and which was affirmed at its December term, 1867.

After said affirmance, and on May 10, 1868, the appellants filed a petition for a new trial, to which a demurrer was sustained, because, as adjudged by the court, the newly-discovered evidence was incompetent, and if not, it was merely cumulative on the main issue, and not of

that conclusive or permanent character required by law. Subsequently, by leave, the appellants filed an amended bill, containing fourteen specifications of causes for a vacation of the original and affirmed judgment. To this the appellees responded, either denying or avoiding the causes so assigned.

September 26, 1868, appellants filed another amended petition, averring that, since filing their previous amendment, they had, for the first time, discovered *that they could prove* that Wm. Mason had received from them eight hundred and fifty dollars, in full satisfaction for all claims in and to the estate of his father, John Mason, deceased; that they knew they had paid this money before the first suit was brought, but did not know they could prove it until recently; and that Mrs. Ballard, who was a defendant in the original suit, and one of the appellants against whom judgment went, was a married woman at the time of the pretended contract, and had so remained down to the present time, and was, because thereof, incapable of contracting, and she pleads her coverture in bar thereof. Also, that they could now prove that Wm. Mason had said that said original suit was not brought by him, or at his instance, though they had interrogated him in the original suit as to such being the fact, and he had denied it; also denied their charge that said suit was not prosecuted at his instance or by his consent; and that they had also, but three days previously, discovered that neither the original judgment, nor the orders of that day, had been signed by the presiding judge; hence it was a nullity. Also, that they have discovered, since the rendition of said original pretended judgment, that John Mason declared his intention to make appellants absolute deeds, and it was agreed that Todd and wife would receive their advancement in money at John Mason's death; and,

lastly, that they have discovered that the last pretended judgment was rendered July 30, 1868, when the court adjourned the term June 24, 1868; hence it was a nullity: thus making twenty-one specifications. To this amended petition appellees filed answers, denying and avoiding each specific cause therein set out.

September 10, 1868, appellee, Mason, filed separate answers to the first amended petition, they being sworn to by him before the clerk of the circuit court of Randolph county, State of Missouri, where he then lived. To these answers appellants offered a reply; at the same time they filed the last amended petition. The court rejected the reply, but permitted the amended petition, to which exceptions were entered.

September 29, 1868, the appellees filed separate answers to said second amended petition—that of Wm. Mason being verified by his attorneys.

September 30, 1868, appellants excepted to the answer of Wm. Mason to their first amended petition, and to which their reply had been rejected, because it was verified before an officer not authorized by our laws; and on the same day waived any objection to his answer to their second amended petition, because it was verified by his attorneys. Their exception to the first answer was overruled, and exception; the cause being at the same time submitted for trial and final judgment on the pleadings, exhibits, and depositions.

The court dismissed absolutely the suit, so far as it sought to disturb the original and affirmed judgment; but perpetually enjoined the judgment of July 30, 1868; this latter being one to perfect the original judgment, which had merely ascertained the rights of the parties, and had referred the matter to a commissioner to adjust the amount to be adjudged on such ascertained rights.

The commissioner having ascertained and reported the several sums, this latter judgment of July 30, 1868, affirmed it, and adjudicated accordingly.

The court then redocketed the original case, and, to carry out the opinion of this court, adjudge in behalf of William Mason against J. R. Mason, three thousand one hundred and seventy-five dollars; John W. and Saml. Mason, one thousand eight hundred and seventy-three dollars and fifty cents; and Ballard and wife, six hundred and sixty dollars and fifty cents; and in behalf of C. M. Todd, against the same parties, the same sums, to be controlled and collected by his county court guardian when appointed. From which appellants prosecute this appeal.

Many of the causes assigned for review and rehearing may be disposed of by a general statement, that all the errors and irregularities appearing in the original record, and which could have been corrected by the appeal, must now be regarded as settled and adjudicated, and can afford neither a cause for a review, for a rehearing in the court below, nor for correction now in this court. If they were not then discovered and presented by appellants and their counsel, and escaped the attention of this court, it only shows the wisdom of the law in precluding a subsequent investigation, by way of repose to litigants, and penalty for laches in not presenting, in proper time and manner, errors then existing and apparent in the record.

We shall, therefore, only investigate such of the assigned causes for a rehearing as were not necessarily precluded by the former adjudication and affirmance.

The objection to Wm. Mason's answer to appellants' first amendment was technical, even if it be conceded that our laws do not authorize the clerks of circuit courts of

other States to certify the verification of pleadings.    The clerks of circuit courts, we presume, universally have the right to certify the verification of pleadings in their own courts; but after an offer to reply to it, the filing of an amended petition at the same time, in which the court could have put the party under terms, and the waiver of any objections to a subsequent answer, all, if not any one of them, should have been deemed a waiver of objections to this first answer, especially as the exception was not taken to it, until the submission of the case for trial.

This answer was neither a cross-petition, nor did it set up a counter-claim or set-off; therefore, as the law controverted its affirmative allegation, there was no need of encumbering the record with a reply, which often complicates the pleadings with unnecessary affirmative matter, again requiring a response.    The objections to it were properly sustained, or otherwise it was properly rejected.

The evidence now offered is entirely of parol character, and much of it of mere vague recollection of witnesses, who do not themselves speak very confidently, and would, at best, be but cumulative to that presented in the original case, involving the credibility of the conflicting recollection, character, opportunity, &c., of those who testified; and is insufficient, in every aspect of the case, to authorize a review, or rehearing of the case, whether tested by the rules as recognized in our equity jurisprudence, independent of the Civil Code, or tested by its provisions; but much of it is now wholly inadmissible.

W. J. Mason, who testified to the most important fact— that is, the understanding and agreement of the parties at the times Jno. Mason made the deeds to appellants— was a son of J. R. Mason, one of the appellants, a boy eleven years old at that time, residing with his father.

It is past all comprehension that his father did not know he was present at the time he testifies of; not only so, but this boy has since grown up, studied law, and was one of appellants' attorneys in the original suit, and must himself have known what he could testify to, and its importance before the original trial, thereby exhibiting double laches, in both client and attorney. To open a case on such a flimsy pretext as this, would be to make endless litigation, and jeopardize the rights of the successful party. If the father was too careless or too delicate to inquire of the son, and the son was in the same condition as to his clients, the law requires that they should so remain; having not spoken at the right time, they cannot now be heard.

This is the only additional evidence offered of what occurred at the time of the valuation of the land, and entering into the contract between appellants and Todd and wife, and Jno. Mason, deceased.

Another class of evidence is offered of what Jno. Mason said before and after the contract, and after the making the deeds, in the absence of all the parties, especially of Wm. Mason and Todd and wife. It is evident that the rights of the parties under the contract, whatever that was, must be fixed at the time the contract was made; for, whatever may have been the inclination of Jno. Mason's mind previously to the meeting of his children, it was subject to alteration and modification; at least his intentions and desires, as previously expressed, did not make a contract; therefore, they are not competent to show what the contract was when made. Representations of a party as to the soundness and condition of his property to one who may subsequently purchase, are competent, because it may be presumed these were repeated or relied on by the vendee;

but the vendor's statement of his intentions or desires will not be evidence of what a subsequent contract was, when made in the absence of all the contracting parties. When the contract was made and consummated, and Jno. Mason conveyed the land, he ceased to have any interest in it, and the rights of appellants and appellees became fixed and vested, in no manner subject to Jno. Mason's subsequent control, or will, or desires; therefore, his subsequent statements would, at best, be but hearsay, and for that reason incompetent. It is insisted, that, as he conveyed by general warranty, he would be incompetent to testify for appellants, if alive, as he would then be called to uphold his warranty. Had these statements of his now offered been under oath, without a release, there might be much force in the objection; but as they were, at best, but conversations with others than the parties, and in their absence, we think it clear that they are not competent.

But it is also seriously insisted, that the appellants have now proved that Wm. Mason accepted eight hundred and fifty dollars from appellants before the original suit, in discharge of his father's estate. Although this is not specifically averred as being received in discharge of appellants, because of their getting said land, yet, as they set up that Wm. Mason and Todd and wife were to be made equal by John Mason out of his other estate, perhaps it should be regarded as a full denial of William Mason's right of recovery; but its great infirmity is, that it was not set up or relied on in the original defense. The reason assigned is, that they then knew of no one by whom they could prove it; but they could at least have set it up, and searched his conscience, and having done so, had he denied it under oath, and had they subsequently discovered evidence by which they could establish it, and

thus successfully establish his fraud and falsehood, there would have been much in this specification; but when it was not even presented as a defense, we see but little force in it now; besides, our Civil Code is explicit, that all defenses known must be presented, and no subsequent modification of a judgment shall be made for a pre-existing cause of defense.

It is also insisted, that now they have proved that Wm. Mason said that the original suit was without his consent or authority. This cause was set up in the original defense to his petition, and evidenced by his two letters written to one of appellants; yet his pleadings were sworn to by himself, and he manifested an interest in prosecuting the suit; denied the charge that it was began and prosecuted without his authority, under oath, and averred that the suit was begun, and was being prosecuted, by his approbation, to establish his rights, and for his benefit; and these were doubtless considered by the court as of more importance than his verbal statements, in perhaps idle or drunken conversations, especially as he has manifested his right of recovery of more than five thousand dollars.

It is also insisted, that C. M. Todd, the minor appellee, was not properly before the court—the summons not being executed on him as the law requires. His rights were protected by the appointment of a guardian *ad litem*, who prosecuted with vigilance his cause, and obtained a judgment in his behalf. The law will not hand him over to the tender mercies of his adversaries, to see that all the orders were strictly regular as to him, and if not, permit them to escape responsibility to him as fixed by the judgment. However forcible such objection might come from him, it has none when presented by his adversary: first, because if it only applies to the last suit, the

error was their own; if to the first suit, it is too late, after said judgment has been affirmed by this court.

By section 53, Civil Code, an infant may sue by his guardian or next friend. If it was technically erroneous to permit a cross-suit by an infant, by his guardian *ad litem*, which is by no means certain, after issue and judgment in his behalf, it is too late to object. Nor does the suspension of the execution, until statutory guardian is appointed, injure defendant, as he could pay the money in court. Certainly the expense and harassment of an execution could be of no benefit to him.

As these appellants substantially got, by their amended petitions, the benefit of the causes assigned in their original petition for a review, there would be no substantial reversible error in sustaining a demurrer to it, even if it was demonstrated that it was erroneously sustained, which it is not.

Wherefore, the judgment is affirmed with damages, there being a supersedeas.