68    328
75    42

J. CAMPBELL LORIMER, *Trustee*, v. W. G. FAIRCHILD
*et al.*

**No. 13,450.**   ( 75 Pac. 124.)

SYLLABUS BY THE COURT.

1. NOTE AND MORTGAGE — *Extension Agreement — Consideration*.   The promise of a debtor to keep an overdue loan of money secured by mortgage on his land, and pay a reduced rate of interest upon the note given for the loan, for a definite period of time, is a sufficient consideration for an extension by the creditor of the time for the payment of the note for such period.

2. PRACTICE, SUPREME COURT — *Second Review of a Case — Decision of Court of Appeals Binding on this Court Ordinarily — Exception Stated*.   Ordinarily the decision of one of the courts of appeals of this state in a case which it has determined and remanded to the district court will be deemed to be the settled law of the case in a subsequent proceeding in error in this court, and the questions involved will not be made the subject of another examination.   If, however, the cause was remanded for a new trial and not merely for some special proceeding supplemental to the mandate, and the record in this court presents the same questions which were presented to the court of appeals, this

court has the power to make such reexamination; and it will do so in a case involving a question of great public importance when the former decision was erroneous and tended to confuse the law because in conflict with a decision of the court of appeals of the other department of the state, and with a previous expression of opinion by this court, especially when no injustice will result from a reversal of the judgment rendered.

Error from Reno district court; M. P. SIMPSON, judge. Opinion filed January 9, 1904. Reversed.

*George A. Vandeveer*, and *F. L. Martin*, for plaintiff in error.

*Fairchild & Lewis*, for defendants in error.

The opinion of the court was delivered by

BURCH, J.: The facts of this controversy were found by the trial court to be as follows:

"1. That on the 23d day of July, 1886, the defendant William Stout executed a six-hundred- ($600) dollar note payable to William F. Leonard, a copy of which is attached to plaintiff's petition, marked 'Exhibit A.'

"2. And that at the same time and for the purpose of securing said note said Stout executed a mortgage upon the southwest quarter of section twenty (20), in township twenty-six (26) south, of range nine (9) west, in Reno county, Kansas, a copy of which mortgage is attached to plaintiff's petition, marked 'Exhibit B.'

"3. That thereafter and for valuable consideration and before maturity said note and mortgage were duly assigned and transferred to the plaintiff, J. Campbell Lorimer, trustee, a copy of which assignment is attached to plaintiff's petition, marked 'Exhibit C.'

"4. That said mortgage was duly filed in the office of the register of deeds of Reno county, Kansas, on the 27th day of August, 1886, and recorded in book 34, at page 277.

"5. That on or about the 25th day of October, 1886, the defendant William Stout sold and conveyed the

land in question, by warranty deed, to the defendants Frank M. McKee and Charles Bloom, and that in said deed said defendants McKee and Bloom assumed and agreed to pay said six-hundred- ($600) dollar mortgage as a part of the consideration price for said land.

"6.  That thereafter, and on, to wit, the 17th day of October, 1891, and after the said six-hundred- ($600) dollar note and mortgage had by their terms become due and payable, the defendants Frank M. McKee and Charles Bloom entered into a certain extension agreement with the plaintiff, J. Campbell Lorimer, trustee, extending the time of payment of said note for a period of five years from maturity thereof ; a copy of said extension agreement is attached to plaintiff's petition, marked 'Exhibit D.'

"7.  That attached to said extension agreement were ten interest coupons of even date therewith, payable semiannually thereafter, each representing six months' interest on said sum of six hundred ($600) dollars at the rate of six per cent. per annum, each being for the sum of eighteen ($18) dollars, and at the same time the said defendants Frank M. McKee and Charles Bloom executed a certain other agreement with the plaintiff, J. Campbell Lorimer, trustee, which was a part and parcel of the same transaction as the extension agreement above referred to, said other agreement being dated October 17, 1891, and a copy of which is attached to plaintiff's petition, marked 'Exhibit E.'

"8.  That after the execution of said extension agreement and the interest coupons, on the 17th day of October, 1891, the defendants Frank M. McKee and Charles Bloom conveyed the land in question to the defendant N. G. Hollister, as cashier, and that said Hollister was then cashier of the defendant the National Bank of Commerce of Hutchinson, Kansas, and took said deed in fact as a mortgage to secure an indebtedness of said Frank M. McKee and Charles Bloom to said bank in the sum of eleven hundred ($1100) dollars, and that afterward, and during the pendency of this suit, said N. G. Hollister, for a valu-

.able consideration, conveyed said land to the defend-
.ant J. E. Conklin.

"9.  That at no time after the execution of the ex-
tension agreement, dated October 17, 1891, did the
defendants, Frank M. McKee, Charles Bloom, N. G.
Hollister, cashier, the National Bank of Commerce,
and J. E. Conklin, or either or any of them, pay any
of the interest coupons attached to said extension
agreement of October 17, 1891, but that the defendant
W. G. Fairchild, anticipating becoming the owner of
the land in question, remitted the money and took up
four of the interest coupons, being numbers 6, 7, 8,
and 9, intending to have the same assigned to him,
and that coupons numbers 6 and 7 were so assigned,
but that by inadvertence coupons 8 and 9 were stamped
'Paid.'

"10.  That the amount due the plaintiff on said note
and the one unpaid coupon number 10 amounts with
interest at this time to $819.50, and that no part thereof
has ever been paid to the plaintiff by the defendants
or any of them or any one of them.

"11.  That the defendant Frank M. McKee has
been duly and regularly discharged in bankruptcy by
the United States district court at Wichita, Kan., so
that no judgment can be taken against him."

Exhibits "A," "D," and "E," referred to in these
findings, are as follows:

EXHIBIT "A."

"MORTGAGE NOTE.

"$600.00.          ST. LOUIS, Mo., July 23, 1886.

"On the first day of July, 1891, value received for
money loaned, I promise to pay to the order of Will-
iam F. Leonard, six hundred dollars, with interest on
the same at the rate of 12 per cent. per annum, after
due, until paid.  And I hereby agree that if default
is made in the payment of any of the coupons hereto
attached, or any part thereof, and the same shall re-
main due and unpaid for the period of ten days, in
such case this note, with the interest accrued thereon,
shall, at the option of the legal holder hereof, become

due and payable, and may be demanded and collected immediately, anything herein contained to the contrary notwithstanding, according to the tenor of a certain mortgage bearing even date herewith, given by William W. Stout, single, to William F. Leonard.

"Payable at the office of Wilson & Toms, St. Louis, Mo.                              WILLIAM W. STOUT."

Indorsed: "Pay to the order of J. Campbell Lorimer, without recourse.     WILLIAM F. LEONARD."

EXHIBIT "D."

"EXTENSION AGREEMENT AND COUPONS.

ST. LOUIS, Mo., October 17, 1891.

"WHEREAS, J. Campbell Lorimer, trustee, has agreed to extend the time for payment of a loan of $600, secured by a mortgage made and executed by William W. Stout, dated July 23, 1886, and by the terms thereof due July 1, 1891, for a term of five years:

"Now, in consideration of such extension, we hereby agree to keep said loan for a term of five years from July 1, 1891, and further agree to pay interest on the principal of said debt, according to the tenor and effect of certain extension coupon notes signed by us, of even date herewith; and in case of any default in payment of interest, or in case of non-payment of taxes assessed on the mortgaged premises, or of a breach of any of the covenants in said mortgage contained, it shall be optional with said mortgagee to declare the principal sum of said debt immediately due and payable, and the same may be collected according to the terms and conditions of the said mortgage and principal note, time being the essence of this contract for extension.

"We hereby certify that we are the present owners of the land mortgaged to secure payment of the above-mentioned loan, and we hereby agree to pay said loan as part of the purchase-price.  FRANK M. McKEE.

C. BLOOM."

Exhibit "E."

"EXTENSION AGREEMENT.

"St. Louis, Mo., October 17, 1891.

"WHEREAS, J. Campbell Lorimer, trustee, has agreed to extend the time for the payment of a loan for $600, secured by a mortgage on the following described real estate : The southwest quarter of section twenty (20), in township twenty-six (26) south, in range nine (9) west of the sixth (6th) principal meridian, containing 160 acres, more or less, made and executed by William W. Stout, dated July 23, 1886, recorded in the recorder's office of Reno county, Kansas, in book No. 34, page 276, and by the terms thereof due July 1, 1891, for the term of five years :

"Now, in consideration of such extension, we hereby agree to keep said loan for the term of five years from July 1, 1891, and further agree to pay interest on the principal of said debt at the rate of six per cent. per annum, payable semiannually, according to the tenor and effect of certain extension coupon notes, signed by us, of even date herewith ; and in case of any default in payment of interest, or in case of non-payment of taxes assessed on the mortgaged premises, or of a breach of any of the covenants in said mortgage contained, it shall be optional with said mortgagee to declare the principal of said debt immediately due and payable, and the same may be collected according to the terms and conditions of the said mortgage and principal note, time being the essence of this contract for extension.                    FRANK M. McKEE.
                                        C. BLOOM.''

The trial court's conclusion of law from these facts was in the following language :

"As a conclusion of law, based upon the above and foregoing facts, the court holds that it is bound by the opinion of the Kansas court of appeals, southern department, central division, rendered in this case when in that court on proceedings in error, and that under the opinion filed by said court in this case the plaintiff is not entitled to recover ; that there was no considera-

tion for the extension agreement executed October 17, 1891, and that therefore this action was barred, at the time this suit was commenced, by the statute of limitations.''

The opinion referred to is that of *Conklin v. Lorimer*, 10 Kan. App. 550, 63 Pac. 23, the syllabus of which is as follows :

''L., the mortgagee, entered into an agreement with M. and B., grantees of the mortgagor, to extend the time of payment of a past-due note and mortgage for five years. It does not appear that M. and B. agreed to pay a greater rate of interest than was provided for by the terms of the original agreement, or that any advance payment of interest was made, or any act done which would constitute a sufficient consideration, or that M. and B. or either of them paid any interest on the debt after the making of the extension agreement. More than six years after the note and mortgage became due by their terms, this action was brought. *Held*, that the extension agreement, being without consideration, was ineffectual to prevent the running of the statute of limitations, and that the cause was barred.''

A careful analysis of the transaction will show the fallacy of this syllabus to lie in the words, ''or any act done which would constitute a sufficient consideration''—construing the word ''act'' to include in its legal signification the making of a promise. By virtue of the extension agreement the holder of the note gave up his right to enforce immediate payment, gave up his right to collect twelve per cent. interest upon the note while it remained unpaid, and bound himself to take a less rate of interest, and to make no demand for the payment of the principal at all for the fixed period of five years. The landowners gave up their right to pay the principal at once, to stop interest, and to free their land from the lien of the mort-

Lorimer v. Fairchild.

gage, and bound themselves to keep the money and to pay interest upon it at a given rate for the fixed period of five years.  The holder of the note acquired the valuable right of keeping his money at interest, at a satisfactory rate, for a fixed period, and the landowners acquired the valuable right of the undisturbed use of a sum of money for a fixed period at a satisfactory rate of interest.  A new right, interest, profit and benefit accrued to each party, and a new forbearance, detriment, loss and responsibility were suffered and undertaken by each party.  Every element of the most subtly discriminative definition of value consideration appears, and there can be no doubt that the parties were legally bound.

In the opinion in *Conklin v. Lorimer*, it was said :

"There is no evidence to show that they assumed any new obligation, made advance payments of interest, or did any other acts that would constitute a sufficient consideration for the agreement to extend the time of payment.  McKee and Bloom were bound already to pay the note with a rate of interest at least as high as six per cent., and this promise to do what they were already bound for was invalid as a new promise. (*Schuler v. Myton*, 48 Kan. 282, 29 Pac. 163.)"  (Page 553.)

It is apparent, however, that McKee and Bloom were not obliged to keep the money and pay interest upon it for any specified length of time.  In promising to do so for the period of five years they undertook to do something they were not previously bound to do. The freedom—the legal right to pay, and avoid interest—was renounced, and the burden—the legal duty to keep the money and pay the extension interest coupons for five years—was assumed.  That was a new obligation which McKee and Bloom took upon themselves as an inducement for the extension, and the

principle announced in *Schuler v. Myton* was not infringed.

The case of *Eaton v. Whitmore*, 3 Kan. App. (northern dept.) 760, 45 Pac. 450, is quite in point. In the opinion Judge Garver says :

"It is familiar law that a promise to extend the time of payment of a note, to be binding, must be based upon a sufficient consideration, and that such consideration must be something other than the mere doing or promising to do by the opposite party that to which he was obligated by the original contract. (*Dudley v. Reynolds*, 1 Kan. 285 ; *Jenness v. Cutler*, 12 id. 500 ; *Prather v. Gammon*, 25 id. 379 ; *Ingels v. Sutliff*, 36 id. 444, 13 Pac. 828.) Although in this case the consideration for the claimed agreement for an extension may have been merely the promise of Whitmore to pay interest at a less rate than that which, by the terms of the note, he had already promised to pay, yet we are of the opinion, if it was a promise to pay such interest for a definite future time, it furnished a valid and sufficient consideration to support an agreement to extend the time of payment for such period. It is true the amount agreed to be paid is no more, and in this particular case was less, than could be demanded under the original contract, provided payment was delayed for a like period of time as a mere matter of indulgence ; but, by the new agreement, there was engrafted on the original contract a new and additional feature, that the maker of the note waived his right to stop interest by paying the debt at any time after maturity, and bound himself to pay interest for a further and definite time. He thereby assumed an obligation which was not before imposed upon him, and the holder of the note acquired an additional substantial right, that of refusing payment and exacting interest for the full period of the extension."

In 1846 the supreme court of Ohio carefully distin-

guished the essential features of transactions of this character, as follows :

"If a lender of money, secured by a note, after the same becomes due, contracts with the borrower that the time of paying the same shall be extended for one year, or for any other period, upon consideration that the borrower shall pay the legal or less rate or interest, why is not that a binding contract? The lender, by this contract, secures to himself the interest on his money for the year—and the borrower precludes himself from getting rid of the payment of the interest, by discharging the principal.   It is a valuable right to have money placed at interest, and it is a valuable right to have the privilege, at any time, of getting rid of the payment of interest, by discharging the principal.   By this contract, the right to interest is secured for a given period, and the right to pay off the principal, and get rid of paying the interest, is also relinquished for such period.   Here, then, are all the elements of a binding contract.   But it is said there is no consideration for the extension of time, because the law gives six per cent. after the note is due.   But the law does not secure the payment of this interest for any given period—or prevent the discharge of the principal at any moment.   There is precisely the same consideration for the extension of the time as there was for the original loan." ( *Robert McComb v. William F. Kittridge*, 14 Ohio, 348. )

The reasons for this rule have been stated in various ways.

"This brief reference to the history of the law, showing its origin and growth, is made for the purpose of exhibiting it as it existed when our ancestors brought it with them to this continent, that it may distinctly appear that nothing of its ancient condition gives any support whatever to the doctrine of the anomalous cases mentioned, which, as we must think, without a very full consideration of the subject, substantially rule, that an agreement to pay interest for the for-

bearance of money for a definite time is not a sufficient consideration for a promise to forbear, when the original debt bears the same rate of interest. It is true that, if the time had been voluntarily given, the note would have drawn the same rate of interest promised to be paid. But if this be an argument, it assumes that the principal debtor and surety would, in any event, have failed to pay until the lapse of the period of indulgence given by the agreement. It assumes that men will never discharge an interest-bearing obligation to avoid the payment of interest, and that it is not to the debtor's advantage to pay the debt for the purpose of stopping the interest; and, moreover, that it is not beneficial to the creditor to obtain a contract which will continue his investment for a definite period for the sake of the lawful interest. But when it is borne in mind that in every commercial country men and moneyed corporations are constantly seeking to loan money for definite periods, for the profit derived from interest, and that they grow rich by the operation, and that debtors frequently seek the opportunity to pay their interest-bearing debts before maturity in order to save interest, it will not be very apparent that where the creditor bars the right of payment to him at the maturity of the obligation, by a new contract, and continues the investment at interest for an additional definite period, payable at the expiration of that period, he will derive no benefit from the performance of the new contract. The benefit of such a contract to the creditor is, that he continues the loan for a specified time, when without the contract the debtor might lawfully pay at once, and thus stop interest. So that it might as well be contended that an original contract of loan for a given time at lawful interest shall not bind the lender to wait for his money until the lapse of the time stipulated. The consideration for the performance is in one case precisely as valuable as in the other." (*Pierce v. Goldsberry*, 31 Ind. 52, 54.)

"The agreement of the principal to pay interest for a specified time, after the note became due, furnished

Lorimer v. Fairchild.

a sufficient consideration for the promise to delay. Both agreements were valid, and binding upon the parties respectively, and enabled each to accomplish what he appears to have considered a desirable purpose—a further investment for a definite period for the creditor, and an extension of credit for the same time for the debtor. The legal effect of the agreements was to disable the former from enforcing collection, and the latter from making payment of the note; until the expiration of the year stipulated; and to alter the contract, and change the responsibility of the sureties, without their consent." ( *Chute v. Pattee*, 37 Me. 102, 105.)

"If the holder of a note which has become due agrees with the principal maker of said note that he may retain the sum due for a definite period of time, upon his promise to pay usurious interest, and such maker agrees to keep said sum for such definite time, and to pay said interest, this agreement will discharge a surety on said note not consenting to such contract for forbearance. Although the usury cannot be collected, the legal rate can be; and the absolute right to get interest for a given time is a valuable consideration to uphold a promise to forbear, and to tie the hands of the creditor, so that he cannot sue until the expiration of the time agreed on, as aforesaid. ( *Chute v. Pattee*, 37 Me. 102; *McComb v. Kittridge*, 14 Ohio, 348; 2 Am. Lead. Cas., 5th ed., 469.)" ( *Brown v. Prophit*, 53 Miss. 649.)

"If the new agreement was that the debtor should pay at the end of the period agreed upon for the extension precisely the same sum which was due at the time the agreement was entered into, the case might be different. But a promise to do what one is not bound to do, or to forbear what one is not bound to forbear, is a good consideration for a contract. In case of a debt which bears interest either by convention or by operation of law, when an extension for a definite period is agreed upon by the parties thereto, the contract is, that the creditor will forbear suit dur-

ing the time of the extension, and that the debtor foregoes his right to pay the debt before the end of that time. The latter secures the benefit of the forbearance; the former secures an interest-bearing investment for a definite period of time. One gives up his right to sue for a period in consideration of a promise to pay interest during the whole of the time; the other relinquishes his right to pay during the same period, in consideration of the promise of forbearance. To the question, why this is not a contract, we think no satisfactory answer can be given. It seems to us it would be a binding contract, even if the agreement was that the debt should be extended at a reduced rate of interest." (*Benson v. Phipps,* 87 Tex. 578, 580, 29 S. W. 1061, 47 Am. St. Rep. 128.)

"The agreement to keep the money another year and pay the interest thereon, was a sufficient consideration for the promise of the payee to extend the time of payment. It may have been, and doubtless was, of great benefit to Dodgson to secure a loan another year at ten per cent. interest. Had the money been paid in, a customer might not be, found ready to borrow at so large a rate of interest, and hence the money might lie idle in the owner's hands a whole year." (*Dodson et al. v. Henderson,* 113 Ill. 360, 364.)

"The consideration flowing to the holder was the implied promise of the maker to pay interest during the full period of the extension at the rate expressed in the instrument; and the promise of the holder to forbear suit for a definite period constituted a good consideration for the agreement upon the part of the maker to pay interest for such full period. Here are all the elements of a valid contract, and upon principle we are unable to see why such an agreement should not be sustained by the courts. The reasoning so often advanced by courts holding a contrary doctrine, that the maker under such circumstances assumes no additional obligation, that the note by its terms binds him to pay interest until the note is paid, does not, in our opinion, meet the case. It overlooks

the fact that by the new agreement the maker is bound to pay interest for the full term, whereas, aside from such new agreement, it would be his privilege to make payment at any time." (*Nelson v. Flagg*, 18 Wash. 39, 41, 50 Pac. 571.)

"The holder of the note in this case, by the contract of extension, secured to himself as he supposed the payment of interest on the principal of the note for three months longer, and the debtor precluded himself from getting rid of the payment of interest for that period by discharging the principal. The promise of each was a part of the consideration. It is a valuable right to have money drawing interest, and it is a valuable right to have the privilege at any time of getting rid of payment of interest by discharging the principal." (*Drescher v. Fulham*, 11 Colo. App. 62, 68, 52 Pac. 685, 687.)

These authorities cite others in which the same conclusion is reached.

This court has not, heretofore, decided the precise question now under consideration in an authoritative way. In *Royal v. Lindsay*, 15 Kan. 591, 594, Mr. Justice Brewer said:

"That a promise to pay interest for a definite period of time, is a sufficient consideration for an agreement to extend for a like period the day of payment, is affirmed by these authorities : *Wheat v. Kendall*, 6 N. H. 504; *Bailey v. Adams*, 10 N. H. 162; *Chute v. Pattee*, 37 Me. 102; *McComb v. Kittridge*, 14 Ohio, 348; 2 Am. Leading Cases, 5th ed., 469. It is denied in *Reynolds v. Ward*, 5 Wend. 502; *Kellogg v. Olmsted*, 25 N. Y. 189; *Parmalle v. Thompson*, 45 N. Y. 58, 6 Am. Rep. 33; *Gibson v. Irby*, 17 Tex. 173; 2 Parsons on Notes and Bills, 528.

"It is perhaps not necessary that this question shall in this case be definitely decided, though we may say that the suggestions made in favor of the proposition by the court in the case from 14 Ohio seem to us of great force."

The suggestions referred to have lost nothing of their force by lapse of time, and the doctrine they elucidate has the support of the most closely reasoned cases.

Therefore, the judgment of the court of appeals of the southern department and the judgment of the district court, in obedience to that of the court of appeals, were erroneous.

It is insisted, however, that the decision of the court of appeals has become the law of this case, and is, therefore, binding upon the parties, even though it be erroneous.

In *Headley v. Challiss*, 15 Kan. 602, the syllabus reads:

"Where a case is brought a second time on error to this court, the first decision will be deemed the settled law of the case, and will not be made a subject of reexamination.

"This rule extends, not merely to all questions actually presented by counsel, but to all questions existing in the record, and necessarily involved in the decision."

The opinion contains the following statement of the rule and citation of authorities supposed to sustain it:

"This case has been once before to this court. (*Challiss v. Headley*, 9 Kan. 684.) Upon abundant authority, and well-settled principles, the decision at that time has become the established law of the case. *Phelan v. City of San Francisco*, 20 Cal. 40; *Polack v. McGrath*, 38 Cal. 666; *Yates v. Smith*, 40 Cal. 662; *McKinlay v. Tuttle*, 42 Cal. 570; *Washington Br. Co. v. Stewart*, 3 How. 413, 11 L. Ed. 658; *Booth v. Commissioners*, 7 Metcalf, 286; *Hosack's Ex'rs v. Rogers*, 25 Wend. 313; *Mason v. Mason*, 5 Bush (Ky.), 187. Whatever, therefore, was at that time decided, is not now a matter for reexamination. Nor is this limited to the mere questions noticed in the opinion, nor indeed to the actual

matters presented by the respective counsel, and considered by the court. It extends to all matters actually existing in the record, and necessarily involved in the decision. Thus, in the case from 3 Howard, cited above, a question was raised as to the jurisdiction of the court; but as the case had once before been taken to the court, and a decision rendered upon the merits, the question of the jurisdiction was held to be also settled, although, as a matter of fact, it had not been considered; and this, because jurisdiction is involved and assumed in an inquiry into and a decision upon the merits. See, also, the cases above cited from 7 Metcalf, 25 Wend., 5 Bush, and 38 Cal.''

In *C. B. U. P. Rld. Co. v. Shoup*, 28 Kan. 394, 42 Am. Rep. 163, the syllabus reads:

''Where a case is brought a second time on error to this court, the first decision will be deemed the settled law of the case, and will not be made the subject of reexamination.

''While this rule may not be a cast-iron rule, incapable of relaxation under any circumstances, yet it must be adhered to where the question is one of great doubt, has been thoroughly considered, and is one whose decision involves no serious injury to general rights.''

In the opinion it was said:

''Nearly all the questions in the case were considered and determined when it was here before. The decision of those questions has become the established law of the case. (*Headley v. Challiss*, 15 Kan. 602.) Nevertheless, counsel for plaintiff in error seriously challenge the decision then made, and earnestly contend that this court erred and should reexamine the questions; and they refer to the opinion in *Long v. Wolf*, 25 Kan. 522, in which we stated that we had gone to the extreme verge in this case in upholding defective notices of redemption, and that the case deserved to be limited rather than extended. We do not understand that the rule that a decision once made

becomes the established law of the case is a cast-iron rule, and incapable of relaxation in any event.   Cases may arise in which it will be very clear that the first decision was erroneous, that not only in the case at bar will wrong result from adhering to the decision, but also other interests through the state will be imperiled ; hence we do not doubt the power of the court to reconsider and reverse a prior decision in the same case. Still, in all ordinary cases the rule is as above stated. After a decision has once been announced by this court, the further steps in continuation of the controversy are based upon and regulated by that decision, and unless it is plain that a serious error has been committed, such decision should be adhered to.   Now it is not clear to us that the prior decision was wrong. On the contrary, the question still seems one of great doubt.   Much can be said on either side, but after all the arguments *pro* and *con* have been considered, we can only say that we hesitated at the time the prior decision was made ; we hesitate still, and that very doubt compels us to adhere to that decision.''

In *Crockett v. Gray*, 31 Kan. 346, 2 Pac. 809, the syllabus is practically the same as that of *Headley v. Challiss*, supra.   The opinion contains the following discussion of the rule :

''Viewed as an original question, we think there is force in this claim, but the defendants are too late in presenting it.   It was a question necessarily involved in the case as it came to us before.   If, whether the homestead included one acre, or the entire tract, the contract was void, then the judgment of the district court was right, and no reversal should have been ordered.   Counsel failed to present it then, and it is too late now.   A case cannot be tried by piecemeal. Every defense that exists must be presented, and when a case is reversed, the defeated party will not be heard to say that there were other reasons for affirmance which he might have presented.   A decision once made becomes law of the case, and this rule embraces

not merely àll questions presented, but also all questions necessarily involved in the decision.    (*Headley v. Challiss*, 15 Kan. 602 ;   *Rld. Co. v. Shoup*, 28 id. 394, 42 Am. Rep. 163.)

"Counsel, not questioning the general rule, claim that it is not an inflexible one, but must yield when justice and equity imperatively require it.    But even with this limitation, we think the rule must control in the present case ;  for there is no equity in releasing a party from a fair and reasonable contract into which he freely entered."

In *Norton v. Huntoon*, 43 Kan. 275, 22 Pac. 565, the syllabus is as follows :

"Where a cause has once been reviewed in the supreme court on error, the judgment of the lower court modified, and the cause remanded, *held*, that in the subsequent proceedings in said cause the former decision of this court will not be reviewed, but it is final and conclusive."

The commissioner who wrote the opinion did not discuss the subject.

In *Wheelock v. Myers*, 64 Kan. 47, 52, 67 Pac. 632, 633, referring to the position taken by one of the counsel in the case, the court said : .

"He invokes the doctrine that the first decision of a court is the law of the case on all questions presented by the record and on all questions necessarily involved in the decision.    We agree with him on this last proposition.    It was so decided in *Headley v. Challiss*, 15 Kan. 602."

These quotations embody the principal utterances of this court upon the subject prior to *Railway Co. v. Merrill*, infra.    The foundation of the rule and the reasons for its limitations have not been elaborated. In the case of *City of Hastings v. Foxworthy*, 45 Neb. 676, 63 N. W. 955, 34 L. R. A. 321, this was done. The cases cited in *Headley v. Challiss* and many others

have there been given a most searching examination, and the law upon the subject was shown to be involved in considerable confusion. The conclusion reached was stated as follows:

"An appellate court, on a second appeal of a case, will not ordinarily reexamine questions of law presented by the first appeal, but where the case was on the first appeal remanded generally for a new trial and the same questions are presented on the second trial, the appellate court is not bound to follow opinions on questions of law presented on the first appeal and may reexamine and reverse its rulings on such questions, and should do so when the opinion first expressed is manifestly incorrect."

This is substantially the doctrine of *Central Branch U. P. Rld. Co. v. Shoup*, supra, and the practice of this court has been to reverse its former decision in the same case and follow "the law of the land," rather than "the law of the case," whenever an imperative legal necessity demanded. The cases of *Warner v. Broquet*, 54 Kan. 649, 39 Pac. 228, and *Railway Co. v. Merrill*, 65 Kan. 436, 70 Pac. 358, 59 L. R. A. 711, 93 Am. St. Rep. 287, are instances.

In the latter case Mr. Justice Smith said:

"Counsel for defendant in error have invoked the rule *stare decisis*, and insist that the former decision must govern on the second appeal. This would come to us with more force if we were not now considering the same case with the same parties before the court. If an erroneous decision has been made, it ought to be corrected speedily, especially when it can be done before the litigation in which the error has been committed has terminated finally. We are fully satisfied that the rule of the former case is shattered by the pressing weight of opposing authority, and that reason is against it." (Page 451.)

In the present case the decision claimed to be bind-

Lorimer v. Fairchild.

ing was rendered by an intermediate court. The cause was remanded for a new trial and not merely for some special proceeding supplemental to the mandate. The same parties now appear in this court with a record presenting the same questions as before. The former decision was clearly erroneous. It was in direct conflict with a decision of a court of equal authority having jurisdiction over another portion of the state, and was in opposition to an expression of opinion given by this court in 1875. The question is of great public importance, touching as it does the very essence of a comprehensive class of every-day contracts of the people of this state. It ought to be finally determined by this court, and no injustice can result in this particular case from a reversal of the judgment rendered.

In the ancient Celtic law-book, the Senchus Mor, it is said there are three periods at which the world is of little worth : the time of a plague, of a general war, and of the breaking of express agreements. The fair and reasonable agreement of the parties in this case extending the time within which a loan of money made in good faith might be repaid, ought not to be broken.

The judgment of the district court is reversed, with direction to enter judgment upon the findings of fact for the plaintiff, according to the views herein expressed.

All the Justices concurring.