## ORR *et al.* v. REED *et al.*

No. 4938.   Opinion Filed August 3, 1915.

(151 Pac  200.)

1.  **VENDOR AND PURCHASER—Bona Fide Purchasers—Actual Knowledge.**  Plaintiffs purchased in 1905 and recorded deed in wrong recording district through mistake.  Defendant purchased in 1907, and at the time he purchased he had no notice that plaintiffs had a prior deed.  At the time defendant purchased, plaintiffs were in possession and had the land under fence and a good portion in cultivation.  Defendant's agent made a personal investigation of the land before he purchased and learned the fact that the land was fenced and a part in cultivation.  **Held,** knowledge of these facts amounted to actual notice that plaintiffs had a prior deed to the land.

2.  **SAME—"Actual Notice."**  "Actual notice," as applicable to conveyances, does not necessarily mean actual knowledge; it may be express or implied; it may be proved by direct evidence, or implied from indirect or circumstantial evidence.  The statutory actual notice is a conclusion of fact capable of being established by all grades of legitimate evidence.

(Syllabus by Mathews, C.)

*Error from District Court, Rogers County;*
*T. L. Brown, Judge.*

Action by John A. Reed and others against J. W. Orr and others.  Judgment for plaintiffs, and defendants bring error.  Affirmed.

*Seymour Riddle,* for plaintiffs in error.

*W. H. Kornegay,* for defendants in error.

Opinion by MATHEWS, C.  The question involved in this case is one concerning conflicting interests in a certain tract of land.  Both sides derive title from a common source.  The parties hereto will be designated as in the court below; defendant Orr being referred to as the "defendant."

It appears that one Henry Vann, a Cherokee freedman, in 1905, having been allotted certain land, sold the same, consisting of 30 acres, to plaintiffs, who went into possession, fenced the same, and put about 20 acres in cultivation. The plaintiffs remained continuously in possession of the land in controversy from January, 1905, up to the time of the trial and had planted the broken land to crops each year during that time, except the land lay idle during the year 1907. The plaintiffs, through mistake, filed their deed at Nowata, but the land was in the Claremore recording district. The plaintiffs paid the taxes on the land each year except 1910, when defendant paid the taxes, although plaintiffs attempted to pay same, but found that defendant had already paid.

Upon the part of the defendant, it appeared that on the 8th day of February, 1907, Henry Vann, the original owner, sold and conveyed the premises in controversy to one G. R. Smith, who, on the 28th day of February, 1907, sold and conveyed the same to the defendant for a consideration of $450; this deed being filed for record on the 1st day of March, 1907, at Claremore.

Defendant introduced further testimony to the effect that in February, 1907, he was residing at Vinita, at the time he purchased the land from G. R. Smith; that he understood the tract was outlying land and in the possession of no one; and that he had no knowledge that plaintiffs claimed it or had a deed to it. The defendant's son testified that, at the request of his father, he went out to investigate the tract before his father bought it; that the land was fenced and about one-half of it had cornstalks on it, but no one was living on the place, and there were no houses on it; that he inquired of one person who owned it and he did not know; that when he went out to

see the land he took a surveyor, who ran out the lines for him.

The defendant contends that he purchased without notice of any adverse claims, and that the records did not show a deed to plaintiffs, while plaintiffs contend that they were in open and visible possession of the tract of of land, which was sufficient notice to defendant of their interest in the land.

The case was tried before the court, who found for the plaintiffs, and defendant has appealed.

As the entire transaction took place before statehood, while the Arkansas law was in force in the Indian Territory, the rules of law for the decision must be found in Mansfield's Digest of the Arkansas Law, as of May 2, 1890. The statute in point is section 671, Mansfield's Digest:

"No deed, bond, or instrument of writing, for the conveyance of any real estate, or by which the title thereto may be affected in law or equity, hereafter made or executed, shall be good or valid against a subsequent purchaser of such real estate for a valuable consideration, without actual notice thereof; * * * unless such deed, bond, or instrument, duly executed and acknowledged, or approved, as is or may be required by law, shall be filed for record in the office of the clerk and *ex officio* recorder of the county where such real estate may be situated."

The question involved herein rests upon what is meant by "actual notice" as used in the statute, and both sides to this controversy seek support in the case of *Hamilton v. Fowlkes*, 16 Ark. 340, a case in point, and an examination of the same discloses that the case tends strongly to the side of the plaintiffs here.

The case involved the same question as the case at bar. It seems that two parties had taken up public land adjacent to each other before the same had been surveyed and the lines laid out, and it was agreed that each should have that part then in his respective possession, and after the same was surveyed and title obtained that each should deed to the other any part which he might obtain deed for from the government which the other might have in his possession, and a written agreement was entered into to that effect.

In course of time and before the deeds were executed according to the agreement, both parties died, and the successor of one of the parties, who, the court found, bought without any actual knowledge of such an agreement, refused to comply with it and sued for the exact tract called for by his deed, a part of which was in the possession of and under cultivation by the other party. In that case the court quoted, with seeming approval, many eminent authorities which hold that actual, open, and visible possession is notice to the world of the claim by which the land is being held, and it is immaterial whether actual knowledge can be traced to the purchaser, because the law casts on him the duty of ascertaining the facts, but rested its decision therein upon the finding that the purchaser had heard that some agreement existed between the former owners, the character of which he might have ascertained by application to the proper source, which, taken in connection with the open and visible occupancy and cultivation of the land, was legally sufficient to put the purchaser upon inquiry and charge him with notice.

Now to compare the facts and holdings in that case with the one at bar: There the court found that the pur-

chaser had no actual notice of the adverse possession but had heard that the agreement noted existed between the former owners of the lands. In the case at bar, the evidence is that the defendant had no notice of a former deed to the tract in controversy, but through his son, acting as his agent, had sufficient notice of facts that would put any ordinarily prudent man upon inquiry, and, by a casual investigation, he could easily have learned the facts in the case.

The showings made by the defendant do not impress this court very favorably. It appears to be a case of a party closing his eyes and saying, "I do not see," when he means, "I will not see." When the defendant's son made his hurried and imperfect examination of the premises, he found the same all fenced and about 20 acres with cornstalks on it, showing that it had been in cultivation the previous year. Seeing these facts, he rested his inquiry as to who had the tract in possession by asking one party in that vicinity who owned the land and was informed he did not know. There seems to have been many parties in that neighborhood who knew plaintiffs owned it; at least, many appeared at the trial who testified to that fact, and by the use of a little prudence defendant could easily have learned that the title was in plaintiffs. The law requires all to be diligent in proportion to the danger, and it is a matter of common and general knowledge that on the Eastern side of this state titles are precarious, and it behooves one to be more than ordinarily observant to learn the true conditions and. under these surroundings, facts and circumstances which might not amount to notice in sections where titles are more certain and stable would be such as to put people on notice here. It is a fact worthy of note that this tract

was originally owned by a Cherokee freedman, and it is a matter of common knowledge that such parties usually divest themselves of title at the earliest possible moment, and the mere fact that a freedman was the original owner should cause the average purchaser to be cautious.

We do not deem it necessary here to decide whether or not adverse possession under an unrecorded deed amounts to actual notice to a party who has no personal knowledge of such posession or deed, but Judge Valentine, in the case of *School District v. Taylor,* 19 Kan. 287, so holds in his usual unanswerable logic under a statute very similar to the Arkansas statute, which is as follows:

"No such instrument in writing (including deeds of conveyance) shall be valid, except between parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record."

To the same effect is *Knapp v. Bailey* (Me.) 9 Atl. 122, 1 Am. St. Rep. 295; *Greer et al. v. Higgins,* 20 Kan. 420.

Our own courts have several times defined "actual notice," and we think these decisions, although under our statutes, are equally as applicable to the Arkansas statute under consideration.

"Where a person has knowledge of circumstances such as would put a prudent person, acting in good faith, upon inquiry, he is chargeable with actual notice of the facts the inquiry would have disclosed." (*Brooks v. Reynolds,* 37 Okla. 767, 132 Pac. 1091.)

"The words 'actual notice' do not always mean in law what in metaphysical strictness they import. They more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts."

"One who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the 'actual notice' he would have received." (*Cooper v. Flesner,* 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. [N. S.] 1180, 20 Ann. Cas. 29.)

The Supreme Court of Arkansas, in the case of *Gaines v. Summers,* 50 Ark. 322, 7 S. W. 301, holds to the same effect:

"A person purchasing an interest in lands 'takes with constructive notice of whatever appears in the conveyance constituting his chain of title.' If anything appears in such conveyances 'sufficient to put a prudent man on inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that he is about to purchase, it is his duty to make the inquiry, and, if he does not make it, he is guilty of bad faith or negligence,' and the law will charge him with the actual notice he would have received if he had made it."

We therefore concur with the decision of the trial court holding that the defendant in this case was charged with actual notice of the deed of plaintiffs to the land in controversy for the reason that he had notice, through his son, that some one was in possession and had fenced and was cultivating the land, and a reasonable inquiry, which the law required him to make, would have disclosed the fact that plaintiffs had a deed to the property.

The judgment should be affirmed.

By the Court: It is so ordered.