GAINES V. SUMMERS.

1. BONA FIDE PURCHASER: *Recitals in deed: Notice of conflicting title.*

A purchaser of lands takes them with constructive notice of whatever appears in the conveyances which constitute his chain of title; and, if sufficient appears therein, to put a prudent man on inquiry, which would, if prosecuted with ordinary diligence, lead to actual notice of a right or title in conflict with that he is about to purchase and he fails to make such inquiry, the law will charge him with the actual notice he would have received if he had made it.

2. SAME: *Notice of trust: Quit-claim deed: Consideration.*

A mortgage of lands was foreclosed and the lands were sold, under a parol agreement between the mortgagor and purchaser at the foreclosure sale, that the lands should be reconveyed to the former on payment of the mortgage debt. The mortgagor, who continued in possession, died without having made full payment of the debt, and his

Gaines v. Summers.

widow, who became the administratrix of his estate, completed the payment, and thereupon the lands were conveyed to her in her own right by a quit-claim deed, in which it is stated that the consideration received for them was five dollars. The deed was duly recorded, and the lands, which were worth about $6,000, were afterwards mortgaged by the widow to secure loans to her, amounting to the sum of $2,220. *Held:* (1.) That when the administratrix thus acquired the title to the lands a trust resulted to the heirs of her intestate: (2.) That the nature of the conveyance to her, and the recital therein, that it was made in consideration of five dollars, were facts sufficient to put a purchaser under the mortgage she executed, upon inquiry, which, if prosecuted with ordinary diligence, would have led to actual notice of the trust in which she held the lands; and that one who bought under such mortgage without inquiry was not, therefore, a *bona fide* purchaser without notice.

APPEAL from *Chicot* Circuit Court in Chancery. JOHN M. BRADLEY, Judge.

*D. H. Reynolds,* for appellant.

1. The appellants are innocent purchasers.

Even if there was a secret trust in favor of the heirs, the mother had some interest in the land under her purchase, and as heir of her son, William P., and whatever her interest was it passed under her deeds of trust and mortgage, and the court erred in canceling them.

Appellants had no notice, except from the records and occupation, and both showed title and interest in Mrs. Saunders, and they dealt with her in good faith, and they are in law, and, in fact, innocent purchasers.

*J. M. Rose,* for appellees.

1. There was a trust in favor of the heirs. *Perry on Trusts, p.* 127, 128; 42 *Ark.,* 25; 40 *Id.,* 393; 42 *Id.,* 503; 40 *Id.,* 62.

2. Appellees, even if they had no actual notice, had constructive notice of facts sufficient to put them on inquiry, and, having failed to prosecute such inquiry, they

will be held to have had notice of those facts which inquiry would have developed.

Mrs. Sanders was administratrix; she was in possession as such; the deed was made to her as "widow of J. H. Sanders." It was a quit-claim deed. The consideration was only $5. These facts were sufficient to put appellants on inquiry. *Wade on Notice, sec.* 17; *Perry on Trusts, sec.* 224.

BATTLE, J. On the first of March, 1883, Martha A. Saunders borrowed of G. T. Stripling fifteen hundred dollars, and mortgaged to him certain lands to secure the payment thereof. Stripling transferred the note and mortgage to Gaines, who brought this action to foreclose the mortgage.

William P. Saunders, John R. Coffman, and Annie P. Coffman, his wife, W. T. Read, and Antoine P. Read, his wife, and Charles L. Mead and Mattie P. Mead, his wife, on their application, were made parties defendants. They filed an answer and cross-complaint, alleging therein, substantially, as follows:

"They admit the execution of the note and mortgage and the transfer to Gaines, but deny that Mrs. Saunders had any right to incumber, sell, or convey the lands; and state that they, as heirs of John H. Saunders, are the owners of and entitled to them. They make J. L. Harris and J. M. Parker, as partners doing business under the firm name and style of J. L. Harris & Co., and Gaines and Mrs. Saunders, defendants to their cross-complaint.

"They state that John H. Saunders, at his death, was in possession of and owned the lands in controversy; that prior to the death of Saunders all of these lands were purchased by Johnson Chapman for John S. Whittaker, as executor of H. T. Walworth, deceased, under a

decree foreclosing a mortgage, Whittaker agreeing that Saunders should have time to redeem them by paying the debt for which they were sold, and to re-convey them to him when the payment was made."

That Saunders remained in possession until he died when Mrs. Saunders became administratrix of his estate and took possession and occupied them without paying rent.

That Chapman, as trustee, conveyed the lands to Whittaker, as executor, he promising to perform the agreement with Saunders; that Saunders, in his life-time, paid $5,000 on the debt for which the lands had been sold, leaving less than one thousand dollars due thereon; that Mrs. Saunders paid the remainder of the debt out of the assets of the estate of her intestate, and Whittaker conveyed the lands to her by quit-claim deed, she being in possession and holding them at the time, as administratrix of Saunders.

They ask that all deeds of trust and mortgages to and conveyances of the lands executed by Mrs. Saunders be cancelled, and that she be decreed to hold the lands in trust for their benefit.

Gaines, Harris and Parker, severally, answered the cross-complaint, and alleged that they are *bona fide* purchasers of the lands in controversy, for a valuable consideration, without notice, and are not affected by any right, claim or interest the heirs of John H. Saunders had therein or thereto.

The evidence introduced on the hearing proves that the lands in controversy formerly belonged to John H. Saunders; that he mortgaged them to John S. Whittaker, as executor of H. T. Walworth, deceased, to secure a debt he owed Walworth, in his lifetime; that the mortgage was foreclosed and the lands sold; that before the

foreclosure there was a parol agreement between Whittaker, as executor, and Saunders, that the lands should be sold and purchased by Chapman and should be reconveyed to Saunders when he paid the debt he owed to the estate of Walworth; that the mortgage was foreclosed and the lands were sold and conveyed to Chapman, as trustee; that, afterwards, Chapman conveyed the lands to Whittaker, as agent and attorney in fact for the heirs of Walworth, with an express understanding that he would perform the agreement with Saunders; that, thereafter, Saunders, in accordance with this agreement, paid to Whittaker $5,000; that Saunders remained in possession of the lands after the sale to Chapman, and continued in such possession until some time in December, 1871, when he died, intestate, leaving the defendants, Martha A. Saunders, his widow, and William P. Saunders, Annie P. Coffman, Antoine P. Read, and Mattie P. Read, his heirs, him surviving; that his widow was appointed administratrix of his estate and qualified as such on or about the 17th of January, 1872; that, thereafter, being and remaining in possession of the lands in right of her deceased husband, she, in accordance with the agreement made with her intestate, paid the remainder of the debt to Walworth's estate, amounting to $1,028.50, to Whittaker; and that, thereupon, Whittaker, by quitclaim deed, conveyed the lands to her in her own right. The consideration of the conveyance was stated in the deed to be five dollars. The deed was duly acknowledged and recorded. Sometime after this, on the 24th of July, 1878, Mrs. Saunders conveyed fifty acres of the lands to Robinson Reddick, in trust, to secure a debt of $720 she owed to L. C. Bryan. The fifty acres were sold under this deed of trust to Bryan, and were then conveyed by Bryan to Z. T. Carlton, in trust, and were sold

under the second deed of trust to the defendants, Harris and Parker. The remainder of the lands was mortgaged to Stripling as before stated.

The court below set aside all the deeds of trust and the mortgage, as to the lands in controversy, and decreed that Mrs. Saunders held the title to the lands, in trust, for the heirs of John H. Saunders, deceased; and Gaines, Harris and Parker appealed.

When Mrs. Saunders acquired the title to the lands in controversy a trust resulted to the heirs of John H. Saunders, deceased, and she held them in trust for the heirs subject to any lien, she may have, on account of money expended in paying off encumbrances, and to any dower and homestead interest she may have in them, and to the payment of the debts against the estate of her intestate; and she continues to hold in that way, so far as the record shows, if the appellants are not entitled to protection as *bona fide* purchasers without notice.

A person purchasing an interest in lands "takes with constructive notice of whatever appears in the conveyances constituting his chain of title." If anything appears in such conveyances "sufficient to put a prudent man on inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that he is about to purchase, it is his duty to make the inquiry, and if he does not make it he is guilty of bad faith or negligence," and the law will charge him with the actual notice he would have received if he had made it. *Stidham v. Matthews,* 29 *Ark.,* 650; *Gilbert v. Peters,* 38 *Barb.,* 488; *Sigourney v. Munn,* 7 *Conn.,* 324; *Anderson v. Layton,* 3 *Bush,* 87; *Rafferty v. Mallory,* 3 *Biss.,* 362; *Harper v. Reno,* 1 *Freem. Chy.,* 323; 2 *Leading Cases in Equity,* 101; *Wade on the Law of*

*Notice,* [*2d Ed.*] *sec.* 17 *and chap.* *V*, and authorities cited; *Ringgold v. Waggoner,* 14 *Ark.,* 69 ; *Hardy v. Heard,* 15 *Ark.,* 184; *Stroud v. Pace,* 35 *Ark.,* 100.

2. SAME: Notice of trust: Quit claim deed: Considera-tion.    The evidence shows that the lands in controversy cost about $6,000,and that there was loaned on them as security $2,220. The deed executed by Whittaker to Mrs. Saunders was a quit-claim deed and was recorded ; and it states that the consideration received for the lands was five dollars. Was not this fact sufficient to put any prudent man on inquiry ? Is it possible that any sane man, having good title to land worth $2,000 or $6,000, would sell it for five dollars ? The question suggests its answer. · Add to this the fact that the conveyance executed was a quit-claim deed, and the conclusion that Mrs. Saunders did not acquire a good and valid title, in the absence of an explanation, would be irresistible. It was, at least, sufficient to have put appellants on inquiry, which, if they had prosecuted with ordinary diligence, would, doubtless, have led to actual notice of the facts as shown by the evidence in this case. But they prosecuted no inquiry ; and it follows that they are not *bona fide* purchasers without notice.

There was no question raised in the court below, and none here, about Mrs. Saunders having a lien for moneys advanced, and, if so, as to appellants' right to be subrogated thereto, and we will not consider it.

The decree of the court below, therefore, is affirmed, without prejudice to appellants' right to sue for subrogation in another action.