## CREEK LAND & IMPROVEMENT CO. v. DAVIS.

No. 723. ·Opinion Filed March 21, 1911.

Rehearing Denied May 9, 1911.

(115 Pac. 468.)

1. **VENDOR AND PURCHASER—Notice of Defects in Title.** A purchaser of lands takes them with constructive notice of whatever appears in the conveyances which constitute his chain of title; and, if sufficient appears therein to put a prudent man on inquiry, which would, if prosecuted with ordinary diligence, lead to actual notice of a right or title in conflict with that he is about to purchase, and he fails to make such inquiry, the law will charge him with the actual notice he would have received if he had made it.

2. **TENDER—Waiver.** When a tender is necessary to the establishment of any right against another party, it is waived or becomes unnecessary when it is reasonably certain that the offer, if made, would have been refused.

(Syllabus by the Court.)

*Error from District Court, Wagoner County; John H. King, Judge.*

Action by Andrew C. Davis against the Creek Land & Improvement Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Baker, Pursel & Garvin (Thomas & Foreman and Kistler & Haskell,* of counsel), for plaintiff in error.
*De Graffenried & Scruggs,* for defendant in error.

DUNN, J. This case presents error from the district court cf Wagoner county. July 23, 1906, Andrew C. Davis filed his complaint in equity against the defendant, the Creek Land & . Improvement ·Company, in the office of the United States Court for the Western District of the Indian Territory, sitting at Wagoner. The purpose of the action was to have a certain deed of conveyance from Maria and James Jefferson to J. S. Brucker, of

the date of July 30, 1904, declared a mortgage and given for security for the payment of the sum of $235, and to have the said deed and certain other deeds made by said J. S. Brucker and his grantees canceled and held for naught. On the occasion of the execution and delivery of the original conveyance, the grantee, Brucker, delivered to his grantors the sum of $235, at which time a written agreement was entered into for the repayment of the same on or before November 1, 1904, which provided: "If said payment shall not be made on or before said stipulated date, said Maria Jefferson and James Jefferson shall have no right to acquire said land or any part thereof at any future time." This agreement was neither acknowledged nor recorded, and the deed of conveyance to Brucker contains no reference thereto, except the words, "subject to contract," which appear in the consideration clause of the deed, which reads as follows: "Two hundred and thirty-five ($235.00) dollars (subject to contract), in hand paid." The deed containing this language was duly recorded. Thereafter, and prior to November 1, 1904, the said Brucker, in violation of his agreement and contract with his grantees, sold the same land, and the plaintiff in error herein purchased it from his grantees in due course without actual knowledge of any written agreement between Brucker and his grantors. To this complaint a demurrer was filed, which was by the court overruled, to which exception was duly reserved. For answer the defendant claimed title in itself to the said land, and averred that the deed from the said Jeffersons to Brucker was a full warranty deed conveying the fee-simple title of said parties to their grantee, and that the same was not a mortgage, and that they had no equities in and to the land conveyed of which the said deed gave any notice, and that it was in good faith an innocent purchaser thereof, and that plaintiff was without interest or title, which he could assert against it. The deed under which plaintiff claims was executed by the Jeffersons to him on September 8, 1904, and after Brucker had on the 19th day of August, 1904, made, executed, and delivered a deed to the said tract of land for $1,380. After the issues were made, the cause was referred

to a master in chancery under a general order of reference, who, after hearing the evidence on July 26, 1907, filed in the office of the clerk of said court his report, with all of the evidence introduced before him, wherein, after making his findings of fact, he concluded and recommended as follows:

"I therefore recommend that the court make and enter a decree herein declaring the deed executed on the 30th day of July, 1904, by Maria and James Jefferson to S. J. Brucker, to be a mortgage, and that there is due thereon to the said S. J. Brucker, or his assigns, and by assigns I mean the defendant in this case, the sum of $235, and, as the plaintiffs have brought into court this amount, that the same be ordered paid to the defendant, the Creek Land & Improvement Company, and that thereupon the defendant, the Creek Land & Improvement Company, be ordered and directed to execute and deliver to the plaintiff, Andrew C. Davis, a good and sufficient conveyance for the land in controversy in this suit, and, upon its failure to do so, that a commission of this court be appointed to make such conveyance."

Thereafter exceptions were duly filed to the said report by counsel for defendant, and on January 17, 1908, the state of Oklahoma having in the meantime entered the Union, and the district court in and for Wagoner county having under and by virtue of the terms of the Enabling Act (Act June 16, 1906, c. 3335, 34 Stat. 267) become the successor of the United States Court for the Western District of the Indian Territory, sitting at Wagoner, the cause came on for hearing before the said court, which on April 13, 1908, entered its decree confirming the report of the master, to which exception was taken, and the case has been regularly filed in this court for review of the decree and judgment entered.

The only question of importance for us to determine is, Did the presence of the words "subject to contract" in the body of the duly executed and recorded deed from the Jeffersons to Brucker charge his grantees and those claiming under them with notice and the duty of ascertaining the terms of the unrecorded contract, entitling grantors to a reconveyance upon the repayment

of the money borrowed; for we believe there can be no serious doubt about it having been the intention of the parties to the original conveyance to make a mortgage, and not a deed, nor that when Brucker sold the land he did so in plain flagrant violation of his solemn contract, and in fraud of the parties who had trusted him. Counsel for defendant contend that, their client having no actual knowledge of the contract relied upon by plaintiff, the mention thereof in the original recorded conveyance was insufficient to charge it with the actual notice which they claimed essential to make them responsible under the law applicable when this transaction took place.

The general rule in these cases is stated in Wade on Law. of Notice (2d Ed.) at section 310, as follows:

"The doctrine embodied in the general statement that a purchaser of realty takes with notice of every adverse legal claim or outstanding equity disclosed by the recitals contained in any of the papers under or through which he traces his title is of universal recognition, both in this country and Great Britain, subject, however, to such refinements and modifications as the peculiarities of adjudicated cases have from time to time demanded."

But it is contended that the phrase, "subject to contract," was insufficient to convey notice of anything whatsoever, that it was an "orphan phrase," without connection with the context, and conveyed to the defendant no notice of any kind of any outstanding legal claim or equity. It must be admitted that standing by itself it conveyed to a grantee, in and of itself, no definite information of the extent of the grantor's claim. But, having been by the grantors placed within the body of the deed for the purpose and with the intent of giving notice of the claim, right, or equity yet retained or held in and to land, was it not sufficient to warn and require all subsequent takers to investigate what contract it was to which that deed had been by its makers made subject? Could a party with notice of that clause say in view of the conceded facts in this case that his claims and rights were superior? Counsel for defendant contend that except "actual notice" of the contract was brought home to the defendant, it took title free

and clear of any claim on plaintiff's part. Conceding that this is the correct rule, and proceeding upon the hypothesis laid down in the text-book above noted that a purchaser of realty takes with notice of every adverse claim or equity disclosed by recitals contained in any of the papers under or through which he traces his title. then the defendant in this case possessed record or constructive notice that the deed in question contained the clause above noted.

Discussing the question of whether or not the actual notice demanded as contended for by counsel could or would grow out of this situation, the same author at section 3 and 4 of his work lays down the following rules, which in our judgment find support in the great majority of cases on this subject:

" 'Actual notice' has been defined by declaring that it exists 'when knowledge is actually brought home to the party to be affected by it.' This excludes all notice which does not amount in fact as well as theory to actual knowledge. There can be no doubt that this definition is too narrow. * * * The courts having accordingly refused to confine actual notice within the narrow limits of the definition quoted above. Their departure from the rule that renders actual notice and actual knowledge synonymous terms is perhaps most conspicuous in cases arising under the registry laws, where, in order to give procedure to a prior unrecorded instrument, over a subsequent one affecting the same land, which has been duly recorded, it is necessary to prove that the subsequent purchaser had actual notice of the prior unregistered instrument. To follow the strict letter of Bouvier's definition, and bring actual knowledge home to the subsequent purchaser, nothing would suffice less certain than the presence of the party to be affected when the prior instrument was executed, and a careful inspection thereof by him with sufficient knowledge of the premises described to enable him to identify the property conveyed as that of which he subsequently becomes the purchaser. And even this might fail to fix him with actual knowledge at the time of the subsequent purchase."

In support of the doctrine there enunciated, see the following authorities: *Cooper v. Flesner et al.*, 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180; *Pope v. Nichols*, 61 Kan. 230, 59 Pac.

257; *Sanborn v. Robinson,* 54 N. H. 239; *Babcock et al. v. Lisk,* 57 Ill 327; *Love v. Bryson,* 57 Ark. 589, 22 S. W. 341; *Gaines v. Summers,* 50 Ark. 322, 7 S. W. 301; *Hooser v. Hunt,* 65 Wis. 71, 26 N. W. 442; *Brinkman v. Jones,* 44 Wis. 498; *Nat. Bank of Commerce v. Morris,* 114 Mo. 255, 21 S. W. 511, 19 L. R. A. 463, 35 Am. St. Rep. 754; *Johnson v. Fluetsch,* 176 Mo. 452, 75 S. W. 1005. This court in the case of *Cooper v. Flesner et al,* defining the meaning of the phrase, "actual notice," following the definition of the Supreme Court of Kansas in the case of *Pope v. Nichols, supra,* held:

"The words 'actual notice' do not always mean in law what in metaphysical strictness they import. They more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts."

To the same effect, the Supreme Court of Arkansas in the case of *Ganes v. Summers, supra,* held:

"A person purchasing an interest in land 'takes with constructive notice of whatever appears in the conveyance constituting his chain of title.' If anything appears in such conveyances 'sufficient to put a prudent man on inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that he is about to purchase, it is his duty to make the inquiry, and, if he does not make it, he is guilty of bad faith or negligence,' and the law will charge him with the actual notice he would have received if he had made it. *Stidham v. Matthews,* 29 Ark. 650; *Gilbert v. Peteler,* 38 Barb. [N. Y.] 488; *Sigourney v. Munn,* 7 Conn. 324; *Anderson v. Layton,* 3 Bush [Ky.] 87; *Rafferty v. Mallory,* 3 Biss, 362 [Fed. Cas. No. 11,526]; *Harper v. Reno,* 1 Freem. Ch. [Miss.] 323; 2 Leading Cases in Equity, 101; Wade on the Law of Notice (2d Ed.) § 17, c. 5, and authorities cited; *Ringgold v. Waggoner,* 14 Ark. 69; *Hardy v. Heard,* 15 Ark. 184; *Stroud v. Pace,* 35 Ark. 100."

We therefore concur in the conclusion reached by the master which was approved in the judgment and decree of the trial court holding that the defendant in this case was charged with actual notice of the terms of the contract between the Jeffersons and Brucker, for the reason that the deed containing the phrase, "sub-

ject to contract," was notice sufficient which, had it been pursued, would have disclosed the terms of the contract to which reference was made.

The contention that plaintiff could not maintain his action except by having first made tender to the defendant in accordance with the terms of the contract is without merit. In the first place, the tender was made to Brucker in accordance with the contract prior to the 1st day of November, 1904, and the defendant in this action did not acquire any right, title, or interest in and to the land for more than a month thereafter, and the record discloses with sufficient certainty that, even had a tender been -made, the same would have been refused, for Brucker had sold the land for $1,380, and, under these circumstances, the law does not require a tender. *St. Louis & S. F. R. Co. v. Richards*, 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032. The money necessary for plaintiff to pay to entitle him to a reconveyance of this property was brought into court and deposited to abide the result of this action, and this was sufficient.

The judgment of the trial court is accordingly affirmed.

All the Justices concur.