POWELL v. UNITED MINING & MILLING CO. et al.

No. 12794—Opinion Filed March 11, 1924.

Rehearing Denied Dec. 16, 1924.

(Syllabus.)

1. **Appeal and Error—Law of the Case—Subsequent Appeals—Change of Decision.**

When the judgment of a lower court has been reversed by this court upon an appeal by proceedings in error and the case remanded to the lower court for a new trial, the lower court, upon the second trial, is required to follow, as the law of the case, the judgment of this court therein rendered. On a second appeal in said case to this court, the decision of this court and rules of law by it announced in its opinion on the first appeal constitute the law of the case as to all points decided in the first opinion, but this is not a cast-iron rule incapable of relaxation in any event. On a second appeal to this court, it may review and reverse its former decision in the same case, where it is satisfied that gross or manifest injustice has been done by its former decision, and will do so where the mischief to be cured far outweighs any injury that may be done in the particular case by overruling a prior decision, and especially where the party benefiting from the erroneous judgment, and in full reliance thereon, has not surrendered substantial and valuable rights which cannot be restored by the court.

2. **Same—Construction of Former Opinion.**

Where the decision of this court on a former appeal in the same case is followed by this court as the law of the case on second appeal therein, and the court believes the opinion expressed in the first appeal is grossly erroneous, the court in determining the issues of law arising in the second appeal will give to the language of the court used in the first opinion only such effect in favor of the erroneous rule of law there announced, as the language used emphatically demands. Where the language used in the first opinion, in expressing a rule of law there erroneously announced, is capable of two constructions, one of which interpretations, though clearly within the rule announced, would do an injustice to one of the parties, and the other of which, if followed, produces a just result, lawful under a correct application of the law, this court will follow the latter construction.

3. **Corporations—Contract With Agent to Buy Real Estate in Name of Corporation—Agent Taking Deed in Own Name—Constructive Trust—Enforcement.**

Where a corporation enters into an agreement with its fiduciary agent to act as such in buying a certain tract of real estate for it, and agrees to take the deed thereto in the first instance in the name of the company as grantee, and agrees that as agent of the company he will construct improvements thereon and pay certain debts of the company, the agent to use his own personal money exclusively for said purposes and thereafter to accept certain shares of the capital stock of said company in full consideration therefor, and where in the discharge of said trust the agent as the representative of the company does so purchase said real estate for the company, but in violation of his trust he takes the deed to said property in his individual name as grantee and thereafter asserts himself to be the sole owner of said real estate and the company is ready, willing, and able to perform its part of the contract at the time when it should be performed and so notifies its said agent, we held said agent became a trustee holding the naked legal title for the company as the cestui que trust at the moment said deed was executed and delivered, and he was bound to convey same to the cestui que trust at any time upon its demand, and the cestui que trust had the right to so demand and to maintain a suit to declare and enforce said trust without first tendering said stock to such trustee.

4. **Same—Former Decision Followed but Repudiated as Further Precedent.**

Where a trustee holds the legal title to real estate in his own name as trustee for a corporation as cestui que trust, and where in the business transaction between them the company is obligated to deliver to the trustee certain shares of its capital stock as consideration for the service and expense of the trustee in acquiring said trust property, and where, under said trust agreement

the agent should have taken the title to said real estate in the company's name as grantee in the first instance and had no right to take said title in his individual name, and where the company was ready, willing, and able to issue and deliver to its trustee the said shares of stock when same had been due for delivery under said trust agreement and so notified said trustee, but the trustee denied said trust and claimed said real estate as his own, and thereafter, through no fault or intention to wrong the trustee, the corporation became unable to issue and deliver to said trustee said shares of its capital stock, the cestui que trust did not forfeit its equitable ownership of said real estate, but a court of equity, if it be equitable so to do, will enforce said trust in a suit timely instituted, provided the cestui que trust offers to do equity and the court finds that it can cause the cestui que trust upon its said offer to fully, sufficiently, and equitably compensate the trustee for its failure to so deliver to him the shares of stock which it was once able to deliver to him and which he had refused. In the case of Powell v. Adler, 69 Okla. 291, 172 Pac. 55, this case was decided in a former appeal, and therein this court announced a contrary rule on this point, which rule is followed here as the law of this case, but the holding of this court there made on the former appeal on this point as a further precedent or rule of law is hereby expressly overruled.

Error from District Court, Murray County: T. P. Clay, Judge.

Action by Ike Adler, receiver (the United Mining & Milling Company substituted party), against Isaac E. Powell. Judgment for plaintiff, and defendant brings error. Affirmed.

Ames, Chambers, Lowe & Richardson, for plaintiff in error.

Young, McKenzie & Haste and Thos. E. Wagstaff, for defendant in error.

LYDICK, J. This action was originally instituted in the district court of Murray county, on March 11, 1914. The plaintiff was Ike Adler, in his capacity as receiver of the United Mining & Milling Company, a corporation. The suit was brought against Isaac E. Powell as defendant, and was clearly a suit to declare and enforce a trust under the provisions of article 4, ch. 77, Compiled Oklahoma Statutes, 1921. It is true that in the petition the plaintiff not only sought to have the court adjudge the existence of a trust, but sought further to have the court, upon declaring such a trust, to require the trustee to clear up the record title to said land by executing and delivering a deed formally conveying the legal title to the cestui que trust. That is permissible

in a suit to declare and enforce such a trust. Judgment was rendered for the plaintiff, and defendant appealed to this court. The substance of the trust agreement, as pleaded and substantially proven to the satisfaction of the court below, and other material facts are stated in the former opinion of this court as follows:

"Prior to the fall of 1912 the United Mining & Milling Company, a corporation, was engaged in the operation and development of a mine near Davis, Okla. There were a number of stockholders and directors, and about the time given above, owing to unsuccessful business, it was concluded to close the mill located upon the lease then owned by the company and about the 1st of January, 1913, the directors convened for the purpose of discussing ways and means whereby the business of the company might be more properly operated. The plaintiff in error was present at that meeting; he being a stockholder and presumed to occupy the position of associate manager of the enterprise. No record of this meeting was kept, but the testimony of those present conclusively establishes: That the plaintiff in error and another made to the directors of the company a proposition that, if they would increase the capital stock of the company from 50,000 to 100,000, and deliver to them the increase, they would pay certain debts of the corporation, erect a mill upon the property leased by it, and in addition thereto would purchase the fee in said property for the corporation. This proposition was accepted by the company, and it was agreed that the plaintiff in error would go to Oklahoma and purchase said property for the corporation, make provision for the erection of the mill and the adjustment of the indebtedness of the company, and that the corporation would increase its capital stock to 100,000, and deliver to the plaintiff in error and his associates the capital stock agreed upon. That thereupon the plaintiff in error went to Davis, Okla., carrying a letter of introduction from one of the directors present to the cashier of a bank at Davis, Okla., and informed the cashier of said bank that his mission at Davis was to purchase this property for his company. The plaintiff in error acquired an option upon this property in his own name, and in a short time thereafter consummated this deal by taking a deed to the property in his own name instead of the corporation, and refused to convey it to the company, although requested by it so to do. Thereafter a receiver was appointed to take charge of the assets of this company, and said receiver instituted this action in March, 1914, alleging in his petition the facts as outlined above, and tendering to the plaintiff in error the amount of money expended by him and praying that the company be adjudged the owner of the equitable title, and that the plaintiff in error as the holder of the legal title, be de-

clared a trustee for said company, and that he be compelled to convey the same to the company. The answer of the plaintiff in error consisted of a general denial."

The foregoing quotation is from said case of Powell v. Adler, 69 Okla. 291, 172 Pac. 55, where the judgment of the trial court was reversed in an opinion written by a commissioner for the Supreme Court and by it approved. Upon a new trial in the lower court, the plaintiff again recovered judgment, and the case is here again on appeal. Powell, the plaintiff in error, defendant in the court below, relies upon an assignment of error based on the statute of limitation. At the outset we must interpret the opinion of the court rendered on the first appeal and determine the effect of that opinion as to the law of this case on this second appeal. This court in its former opinion interpreted this suit as one to declare a trust, for therein the court said:

"As we have seen, this is a constructive trust, and it is well settled in this jurisdiction that such trusts are not within the statute of frauds. McCoy v. McCoy, 30 Okla. 379, 121 Pac. 176, Ann. Cas. 1913 C. 146; Ewing v. Ewing, 33 Okla. 414, 126 Pac. 811. Section 7267, Comp. Laws of 1909, now section 6659 of Revised Laws of 1910, recognizes that trusts in relation to real estate may be created by operation of law. This action is one to declare a trust arising by operation of law on account of facts and circumstances stated above."

The construction of the former opinion most favorable to Powell is to interpret it to say that before such trust could be enforced against Powell by the cestui que trust, there must be delivered to Powell by the cestui que trust the shares of capital stock promised him by the cestui que trust in consideration of the trust agreement. The existence of the trust and the defendant's denial of the rights of the cestui que trust thereunder constitute a cause of action. The existence of these facts the commissioner in his opinion admitted. The court in that opinion did not hold that it was necessary to the existence of a cause of action to declare and enforce said trust that the cestui que trust, before bringing said suit in equity to declare and enforce such trust, must first issue such corporate stock or tender same to Powell. The court merely held that if the cestui que trust "was in a position to comply with its contract and issue to plaintiff in error the stock contemplated by the agreement between the parties, there can be no doubt as to his right to compel a conveyance of this property to the company." In effect, the court said that under the facts admittedly proven in the

first trial of the case in the court below, the court should rightfully adjudge that the trust existed, as was declared by the plaintiff in his petition, and that the court would enforce said trust and hold the plaintiff to be the equitable owner of the real estate involved and compel Powell to clear up the record title thereto by conveying the legal title to said property to the cestui que trust, but the court further held that such a conveyance would not be compelled and neither would the legal title thereto be by the judgment of the court vested in the plaintiff, unless the cestui que trust was able to issue and make a physical delivery to Powell of the shares of capital stock which under the trust agreement Powell was entitled to receive. In other words the court said in effect that a trust did exist, and the plaintiff was the equitable owner of the real estate, and Powell was the trustee, and that he held the legal title to the property in his name for the use and benefit of the plaintiff; but the court further said that the trustee would not be required to convey said property at that time, because the plaintiff could not issue and deliver the agreed consideration to the trustee. The tenor and effect of the court's holding was that a cause of action existed. but relief could not be then granted thereon, for reasons stated. The condition precedent was not one upon which depended the existence of a cause of action but was a condition precedent to the granting and enforcing of relief thereon. The analysis of that opinion rests its conclusions upon a very highly technical distinction, the reason and law for which is not apparent on the face of the opinion, nor can we find it in the books. That opinion is difficult of analysis, because it is so clearly erroneous. The opinion does not proceed to a clear and definite decision as to what should be done, in event the company thereafter became able to issue the stock. This is evident, because this court, in reversing said judgment, did not render judgment for the plaintiff in error, but the case was remanded and a new trial had. Unless our interpretation of the opinion is correct, a new trial was improper and necessarily futile. It is always difficult to continue. to a further and extended conclusion. the process of a line of reasoning made by another. where the reasoning process to be continued is clearly illogical and based upon erroneous principles of law. Though that opinion be the law of the case. we are not required to extend its holding by the same illogical method of analysis, but in extending the reasoning we will follow sound principles of law. The rule of law announced by the

commissioner in the closing paragraph of his opinion never has been the law and never will be, except in so far as the finality of that judgment of this court on the former appeal in this case may make it the law of this case on second appeal. This we say of the erroneousness of the rules laid down in the former opinion, even if it be construed to hold that the issuance and delivery of said capital stock be a condition precedent to the existence of a cause of action. As the opinion of the commissioner therein is so clearly contrary to law, we will give these rules of law, enforced upon us as the law of this case no further force and effect than is necessarily required. It appears from the record that under the trust agreement, it was provided that Powell should purchase the real estate involved in this action in his fiduciary capacity as agent for the company, that he should buy it for the company. and that the grantor should, in the first instance. convey the property to the company in its own name, so that there would never be an instant when Powell would hold either the legal title or equitable title to said property. Powell was to pay the grantor the purchase price and was to pay the cost of improvements, and also to pay certain debts of the company, and for all of which payments he was to receive capital stock in said company of par value of $50,000. In so far as the relations between Powell and the company were concerned, the money expended by Powell, for which the grantor was to convey this real estate to the company, was paid by Powell as part payment for the capital stock which he was thereafter to receive. The legal effect of the transaction then was that the company paid the grantor the purchase price of the real estate, using as its own money the particular money which it received from Powell, and in consideration of which it was bound by contract to issue and deliver to Powell at some later date certain shares of its capital stock. This money was delivered by the company to the grantor through its agent Powell. Powell, in violation of his trust. took the naked legal title in his own name and not in the name of the company, and this he did without the knowledge or consent of the company. At that very moment and without waiting for the company to deliver the stock to Powell, as the contract required to be done at a later date. Powell ipso facto became the trustee holding the legal title to said property in his name for the benefit of the company, and which title he was bound by law to convey to the company upon request. He had no right to wait until he received the stock,

because it was in violation of the terms and agreement that the title to said real estate had been diverted from the company. In fact, Powell was not really entitled to receive all this stock until he constructed the improvements thereon and paid the debts stipulated. If he failed to construct the improvements or pay the debts, just how much o. the capital stock should he receive? This is said to illustrate the point that the existence of the trust was not dependent upon the issuance of the stock as a condition precedent thereto.

Suppose Powell had kept the faith, and, without first receiving the capital stock which at a later date he would be entitled to receive, he had taken the deed in the name of the company as grantor, as he was lawfully bound to do. In that event, would the company have owned the property? The agreement was that the deed was to be taken in the company's name and the stock was to be thereafter issued to Powell. The tenor and effect of the agreement was that the property was to have been conveyed to the company in the first instance, be and remain company property, and thereafter, when Powell had constructed certain improvements and paid certain debts, the company was to give Powell the consideration agreed upon, to-wit, said shares of capital stock. Now equity treats as done that which ought to have been done. We will therefore suppose that this real estate had been conveyed by a deed naming the company as grantee therein. We indulge this presumption only for the moment, for the purpose of illustrating the law applicable to the facts as they were actually made to exist. Thereupon, and in accordance with the agreement. the company would have become both the legal and equitable owner thereof. This supposition is merely enabling us to look at the case, for illustrative purposes only, in a condition which Powell had contracted to produce. He must not complain that, in order to illustrate the law applicable, we stop for the moment to view the case as it would appear, if he had done what he contracted to do. With the title in this condition, what would be the result of the failure of the company to thereafter issue and deliver to Powell the capital stock, which was to be the consideration passing to him. It is to be observed that under the contract this issuance and delivery of the stock to Powell was to come after the property had been conveyed to the company in its own name, and after Powell had constructed certain improvements and paid certain debts. Would the failure of the company to thereafter pay and render to Powell

these shares of stock work a foreefeiture of the company's ownership of this real estate, which for a time it had admittedly owned, both in law and in equity? Emphatically no. for the contract did not provide or such a forfeiture under such conditions, and it is likely that no such foreefeiture could have been lawfully provided therein. Could Powell, after he had bought this property for the company and placed same in the name of the company, have destroyed the company's ownership of such property by failing to further comply with his agreement in refusing to construct said improvements or pay said debts, so as to entitle him to all said shares of stock? At best, the effect of a failure of the company to deliver to Powell said shares of stock could only be to give to Powell a lien upon the realty for the value of the shares of stock which he would have received and the right to hold the company liable generally for the value of such shares of stock and his damages.

If the shares of stock now or at the time the suit was filed have become of reduced value, then the loss is lawfully Powell's. This is true, because Powell has neither pleaded nor attempted to prove that the company was unwilling or unable to deliver the shares of stock to him at the time delivery was due. He has merely undertaken to show that, after he had repudiated his agreement and by his own wrongful act had made it necessary for suit to be brought against him by the company to force him to do his duty, the company reached the point where it was then unable to issue and deliver the stock, because it was in the hands of a receiver. He not only had never demanded the stock. but the pleadings and admitted facts show that he had repudiated his obligation, and that a tender of the stock to him would have been futile. If, during the delay occasioned by Powell's breach of his obligations as a fiduciary agent of the company, the stock had declined in value, Powell cannot complain, because it was through no fault of the company that he did not receive the stock before the company passed into the hands of a receiver. For that matter, it may well be true in the case that Powell's repudiation of his trust agreement may have been one of the approximate and contributing causes of the company passing into the hands of the receiver, and reaching a point where at one time it was unable to make delivery of the stock.

This was not merely a suit for specific performance, and the rules in this respect are altogether different in the two classes of cases. In case of specific performance, the property belongs to the defendant, and plaintiff has no right to proceed in court to compel a specific performance of the contract of purchase and conveyance until he has tendered the consideration, or such tender has been excused by acts of defendant showing that a tender would have been rejected, and would therefore have been futile. In the former opinion of the court it was not held that a tender of the stock to Powell was necessary as a condition precedent to the existence of a cause of action, and if it had been so held, such tender was waived, because in the petition it is pleaded, and in the answer it is admitted. and by the evidence it is proven, that before the case was filed Powell denied and repudiated the contract in toto, and therefore a tender would have been rejected by Powell. A tender would have been futile, and an admittedly futile tender is never required by law when its futility is shown by the facts pleaded by the plaintiff, and no failure to tender is pleaded by the defendant. This court announced, in the case of Creek Land & Improvement Co. v. Davis, 28 Okla. 579, 115 Pac. 468:

"When a tender is necessary to the establishment of any right against another party, it is waived or becomes unnecessary when it is reasonably certain that the offer, if made, would have been refused."

The opinion of the commissioner is very lengthy, and throughout the discussion, covering four printed pages, all rules of law applicable, aside from the point now before us, are clearly covered and ably stated. It is clear, we think, that the commissioner had ideas consistent with our theory here expressed, and wrote the opinion, except the last paragraph, with the intention of affirming the judgment of the lower court. The closing paragraph of the opinion reversing the lower court is entirely out of tune with the discussion of the facts and law of the case already made therein, The statements in the closing paragraph are not entirely clear as to the theory had by the commissioner in support of the rules laid down in the closing paragraph therein. Evidently after writing a lengthy opinion. so reasoned as to support an affirmation of the judgment of the lower court. it was determined that the law required a reversal of the case, and the opinion was not rewritten so as to conform with the changed ideas of the law. The closing paragraph reads as follows:

"If the company or the defendant in error, as the representative of the company, was in a position to comply with its contract and issue to the plaintiff in error the stock con-

templated by the agreement between the parties, there can be no doubt as to his right to compel a conveyance of this property to the company, but under the admitted facts this company is not now in operation, and it is no longer in a position to issue stock or to comply with the agreement made by Powell and his associates with it. This court cannot make contracts between litigants. It may enforce the contracts as they are made, but the power to compel the parties to perform contracts which they never entered into may well be doubted. The contract between these parties contemplated that Powell was to buy this property, pay for the same with his own money, which he did, and he was also to erect a mill and pay certain debts of the company, for all of which he was to receive a certain amount of stock to be issued to him by the company, and no part thereof has ever been issued or delivered, nor any offer made so to do, nor is it now in a position to comply therewith. But the court in the decree here did not attempt to enforce this contract, but rendered a judgment, directing the payment of the money in consideration of the property which he ordered conveyed to the receiver. This it could not do."

When the case reached the lower court for a second trial, it appears that the corporation had passed out of the hands of a receiver and out of the control of the court, and into the hands of its own officers, the receiver having been discharged. The corporation was then substituted in lieu of the receiver as plaintiff in the case, and an amended petition filed. In the amended petition, the plaintiff alleges that it is then "in a position to comply with its contract and to issue to Powell the stock contemplated by the agreement." If the amendment was necessary, this brought it within the rule laid down by the opinion of the commissioner upon the first appeal. It was not necessary for it to allege that it was in a position to issue said stock at the time the original petition was filed, because this court did not so hold in the commissioner's opinion on the first appeal. It merely held that the plaintiff could not recover, because at the time the case was tried such delivery was impossible, and affirmatively held that, if the company or its receiver at the time of the trial "was in a position to comply with its contract and to issue to plaintiff in error the stock contemplated by the agreement between the parties, there can be no doubt as to his right to compel a conveyance of this property to the company." That language is at least capable of such a construction as to make it reasonably mean that the plaintiff had a right to recover in the first suit, if it was then able to issue and deliver said stock, no matter whether it was able so to do at the time the petition was filed. We will give to the opinion of the commissioner, as the law of this case, only such a reasonable construction in favor of such erroneous rule of law as the language itself and circumstances of the case require. The commissioner's opinion does not complain of the sufficiency of the allegations of the original petition, and does not hold that the facts stated therein were insufficient to constitute a cause of action. Under the law, no such allegation was necessary in the petition, and the commissioner's opinion does not hold to the contrary. Under the commissioner's opinion, we hold that all that was required to be proven on this point was that the company was able to issue and deliver the stock and thereupon the court would enforce said trust, upon condition that simultaneously therewith the company make such delivery to Powell. In our opinion, it was not necessary, on second trial, for the company to plead that it had again become able to issue this stock. The plaintiff did not need a new petition, for the commissioner's opinion did not complain of the sufficiency of the petition—it needed new proof, evidence of its required ability to deliver the stock. Had the commissioner followed his illogical reasoning further, he might have held the petition insufficient, but he did not do so. Following it as the law of the case, we are at liberty to reason logically and adopt sound legal principles from the point where his conclusions ended. Upon this theory a cause of action existed at the time the suit was filed, and in the original and initial petition a cause of action was pleaded, all within the time required by the statute of limitation. The amendment to the petition was unnecessary, and the assertion that the new facts pleaded in the amended petition arose after three years had elapsed from the time the cause of action arose is therefore immaterial, for reasons stated. The assignments of plaintiff in error, in so far as they are based upon the statute of limitation, are held not well taken.

The second proposition urged by plaintiff in error is that the attempted increase of the company's stock, by which stock of the par value of $50,000 should be issued and delivered to Powell was illegal, because they say its issuance would be in violation of section 39, of art. 9, of the Oklahoma Constitution, where it is provided that such stock shall not be issued, except for property actually received for the amount of the par value thereof. It is further contended that no lawful meeting of the requisite number of stockholders was had to order the is-

suance of such capital stock. These objections to the legality of the issuance are not within the issues raised by Powell's answer. The company, in its amended petition, pleaded it was "ready and willing to deliver said shares of stock to Powell," and pleaded a tender of said stock into open court for Powell's use. Upon trial, the parties stipulated that "the company had increased its capital stock fifty thousand dollars in addition to the fifty thousand dollar capitalization original stock." Such increase will be considered as meaning a lawful increase, unless the contrary is made to appear from other language of the stipulation. The plaintiff in error is therefore precluded from here questioning the validity of the issue. It appears that this theory was not presented to the lower court, but for the first time is presented to this court on this appeal, and is therefore not available. Even if such be within the issues, the point is not well taken. The contract by which the trust was created provided that Powell should purchase this real estate and place valuable improvements thereon, and from the contract and from the record itself we are unable to say what the value of said real estate and improvements then was or now is. The judgment rendered is based on the theory that Powell does not get this stock until he pays all those company debts and makes all those improvements according to his contract, likely costing much more money. In the lower court Powell neglected to produce evidence showing what the amount will be. The burden of proving the illegality of such issue of stock, for reasons stated, is upon him who asserts the illegality; and, that proof not being furnished here, the assignment of error on that proposition is not sound. Furthermore, the only reason why Powell has the right to assert here that he must receive said company's stock before such trust agreement can be enforced against him is by virtue of the commissioner's opinion in the first appeal. Even in following that opinion as the law of the case, we hold that, where the language of said opinion is reasonably capable of two constructions, one of which, by reason of erroneous rules of law there laid down, would do an injustice to the company, and the other of which would produce a result lawful and just under the law as we interpret it to be, we will give to such opinion the latter construction. The same opinion of the commissioner, giving Powell the right to claim the issuance and delivery of said stock, recites that the company would be entitled to recover if it was in a position to issue and deliver said stock,

and gives, as the only reason for holding it unable to do so the fact that it was in the hands of a receiver. As the commissioner gave this as his sole reason for asserting the inability of the company to issue and deliver the stock, we therefore interpret the opinion to hold and likewise to have made the law of this case to be, that otherwise there was no legal impediment to the carrying out of its contract to issue and deliver the stock in consideration of the payment provided in its trust agreement. Claiming a benefit given him only by an erroneous statement of the law in the former opinion, he must also take the burden of the adjudication there made.

That the opinion of the commissioner in the former appeal is an erroneous statement of the law is well evidenced by counsel for the plaintiff in error, the beneficiary of that opinion, where in their brief they say:

"In the decree in this case, however, the court directed the corporation to deposit with the clerk of the court, stock amounting to $50,000 par value, to be turned over to Mr. Powell when he shall have conveyed the ten acres to the corporation, and performed the other conditions of the contract. Later on in the judgment, however, the court directs Mr. Powell to convey the ten acres at once, and, in the event of his failure so to do, the decree of the court shall operate as a conveyance. In other words, if Mr. Powell had not appealed the cause, and had failed to execute a conveyance of the ten acres in controversy to the corporation, the decree would operate as a conveyance, and Mr. Powell would be deprived of his title to the ten acres in controversy, without having received anything in return therefor, because under the decree the clerk of the court is to retain the stock until the other parts of the contract have been complied with, which obligations the court does not specifically include in the decree, but are found in the recitals of the journal entry. It is plain, therefore, that the decree in this case should be modified and changed, because it is not such a decree as would satisfy the conscience of a court of chancery."

Why should they object to such an order? The commissioner held that the court would not make contracts for the parties, and would therefore not enforce the trust agreement because at that time the company was unable to deliver the capital stock promised to Powell. The commissioner held that a court of equity with all its power could not permit the company to pay money to Powell in lieu of giving him the stock it had promised him, but which through none of its fault, it was unable to deliver. The commissioner had held the parties to a lit-

eral compliance with this contract. Under the trust agreement Powell was not entitled to all this stock until he himself had complied with all the terms of his contract. Having induced the commissioner to so hold and this court to so order in a former appeal, and having presented that opinion to the lower court in a retrial as the law of the case, what else could the lower court do? Bad law eventually produces bad results. The worm turned and the company became able to deliver while Powell apparently became either unable or unwilling to deliver the improvements which he agreed to construct or pay the debts of the company he had agreed to pay. The lower court, following the opinion of the commissioner as the law of the case, rightfully interpreted that opinion to hold that it had no right to cause a delivery to Powell of the shares of stock without Powell literally complying with his trust agrement by paying the company debts which he had agreed to pay —the court could not make new contracts between the parties, so the commissioner said, and so the court ordered. This holding of the lower court is not in accordance with the law, but is correct under the law of the case as made by the former judgment of this court on the first appeal. That is the law under which the case was tried and on which the plaintiff in error here stands and under which we have disposed of this appeal. That law carries burdens to the plaintiff in error along with its benefits.

In the commissioner's opinion he said that a court of equity "cannot make new and different cotracts and then enforce them," and yet by his conclusion of law, he changed the trust agreement so as to permit Powell to become the owner of property which the contract clearly provided should be owned by the company, and enforced that which the parties had never agreed should be done. A court is often required to provide equitable relief where some part of a contract has become impossible of performance, and it is not the law that for every failure of one party to a contract to perform some act not a condition precedent to the existence of a right, such party forfeits all rights thereunder.

Powell now asserts that the court of equity should make some provision for Powell to get a part of this stock or payment in money or some other consideration, because he is making a partial delivery to the company of what the trust agreement provided he should deliver. They say the court should not hold him to a literal compliance with his trust agreement because he finds himself unable to do so. The conscience of the chancellor, they say, should so demand. Their theory is that a court of equity should look through the form to the substance and do equity, reforming the terms of an agreement where equity and justice demand it. They are right. However, this is exactly the sound principle of law which they denied in the former appeal. Their contention to the contrary was written by the commissioner and ordered by the court, and, unfortunately for them, is now the law of this case.

The third proposition on which the plaintiff in error relies is that it was necessary for the lower court to find and adjudge that the property to be received by the company equaled in value the par value of the stock. No request for findings of facts and conclusions of law was made under section 556, Compiled Oklahoma Statutes, 1921, and none were made under that statute. For this reason and others heretofore discussed, we hold the point not well taken.

Even were we to be convinced that our application of the commissioner's opinion is erroneous, we would not reverse the judgment of the lower court, because we are convinced that to do so would be to do violence to justice, to the gross and manifest injury to the defendant in error. Mr. Justice McNeill, speaking for this court, said in section 2 of the syllabus in the case of Wade v. Hope & Killingsworth. 89 Okla. 64, 213 Pac. 549:

"The courts uniformly hold that an appellate court may review and reverse its former decision in the same case where it is satisfied that gross or manifest injustice has been done by its former decision, or where the mischief to be cured far outweighs any injury that may be done in the particular case by overruling a prior decision."

Reference is also made to the following cases: Oklahoma Gas & Electric Co. v. Baumhoff, 21 Okla. 503, 96 Pac. 758; Metropolitan Ry. Co. v. Fonville, 36 Okla. 76, 125 Pac. 1125; Gidney v. Chapple, 26 Okla. 737, 142 Pac. 1099; George v. Connecticut Fire Ins. Co., 84 Okla. 172, 200 Pac. 544, 691, 201 Pac. 510; M., K. & T. Ry. Co. v, Lenahan, 85 Okla. 290, 206 Pac. 233; Lorimer v. Fairchild, 68 Kan. 328, 75 Pac. 124; Omaha Loan & Bldg. Ass'n v. Hindle et al. (Neb.) 116 N. W. 862; State v. Farington (Neb.) 126 N. W. 91; Stratton v. Bankers Life Co. (Neb.) 169 N. W. 722.

A very able and lengthy discussion of the principle here involved is found in the decision of the Supreme Court of Nebraska in the case of Hastings v. Foxworthy, 45 Neb. 676. 34 L. R. A. 321.

And so we say that if we were to become convinced that in our foregoing interpretation and application of the commissioner's opinion as the law of the case, we would for reasons stated, do as did this court in the case of Wade v. Killingsworth, supra—overrule the opinion of this court as expressed by the commissioner on the former appeal, and, following the law as we have announced it herein, we would affirm the judgment of the lower court in so far as it grants relief to the company, but would probably modify same so as to permit Powell to obtain an equitable part of said shares of stock if it appeared that, through no fault of his he was unable to comply literally with the obligation enforced on him to pay company debts and construct the improvements he had contracted to make. If permitted to follow the law as it really exists, we would ignore the form, reach the substance, and grant full equitable relief. As a precedent and rule of law applicable otherwise than in the disposition of this case, the holding of the court on that point in said former opinion is hereby expressly overruled.

Finding that substantial justice has been done by the judgment of the lower court in so far as possible under the former opinion of this court as the law of the case, and that no errors of law occurred prejudicial to the interests of the plaintiff in error, the judgment of the lower court is affirmed.

JOHNSON, C. J., and COCHRAN, BRANSON, HARRISON, and WARREN, JJ., concur.