2004 OK CIV APP 83

**BOSWELL ENERGY CORPORATION,**
Plaintiff/Appellee,

v.

**ARROWHEAD HOMES, INC.;** Neal A. McCaleb and Georgann McCaleb, husband and wife, Defendants/Appellees,

and

Petrocorp, Incorporated; WOP Limited Partnership; Pelco Products, Inc.; Foodservice Enterprise, Inc.; Signal Ridge Development, L.L.C.; Jeff Wolfe and Roger Williams; Tom Vorderlandwehr, Inc.; Physicians of Edmond, an Oklahoma general partnership; Rodney A. Babb and Kimberlee A. Babb, husband and wife; Enogex Exploration Corporation; Mark Svoboda, an individual; Defendants/Appellants,

and

The Johnston Family Limited Partnership; and the Jerrigan Family Limited Partnership, Defendants.

No. 99,809.

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 3, 2004.

Charles B. Davis, Oklahoma City, OK, for Plaintiff/Appellee.

Richard A. Grimes, Jerry Day, Grimes, Gelders, Anderson & Day, Oklahoma City, OK, for Defendants/Appellants.

Opinion by CAROL M. HANSEN, Judge.

¶ 1 Defendant/Appellants, Petrocorp, Incorporated (Petrocorp), its lessors, and others holding interests in its leases, seek review of the trial court's judgment on remand quieting title to the subject mineral interests in Plaintiff/Appellee, Boswell Energy Corporation (Boswell), and its lessors, Defendant/Appellees, Neal McCaleb and Georgann McCaleb. We affirm because the trial court properly applied the law of the case and its order is not against the clear weight of the evidence.

¶ 2 In 1981, the McCalebs acquired a quarter section of land in Edmond, Oklahoma, in fee simple. In 1983 and 1984, they conveyed two parcels, one consisting of 9.593 acres and the other of 21.10 acres, to Defendant/Appellee, Arrowhead Homes, Inc. (Arrowhead), a corporation they formed in 1961 as a real estate development company. Both deeds were on printed forms for warranty deeds. After the printed granting language, the legal description was typed in. Following the typewritten legal description was the printed language, "together with all the improvement thereon and the appurtenances thereunto belonging, and warrant the title to the same." After the printed language, the following was typed in: "Less and except all mineral interests."

¶ 3 The McCalebs leased the minerals to Boswell's predecessor in interest, and Boswell later acquired the lease by assignment. Petrocorp acquired mineral leases from Arrowhead's successor grantees. After the minerals were developed under a pooling order by the Oklahoma Corporation Commission, a dispute arose as to the parties' respective interests and Boswell filed the instant quiet title suit.

¶ 4 Both Boswell and Petrocorp moved for summary judgment. Boswell asserted the deeds unambiguously reserved the minerals to the McCalebs. Petrocorp argued the placement of the language "less and except all mineral interests" in the warranty clause rather than in the granting clause served only to except the minerals from the operation of the covenant of warranty. The trial court granted summary judgment in favor of Boswell, quieting title to the minerals in the McCalebs and to the leasehold in Boswell. Petrocorp appealed in Case No. 92,017.

¶ 5 In its opinion, *Boswell Energy Corp. v. Arrowhead Homes, Inc. (Boswell I )*, 1999 OK CIV APP 36, 976 P.2d 1113, 1116 (citations omitted), the Court of Civil Appeals discussed the development of Oklahoma law regarding the placement and effect of reservation clauses, and concluded as follows:

We adopt the modern rule. The precise location of the "exception" is not controlling. The controlling factor is the intent of the parties. Here, the phrase: "Less and except all mineral interests", could have been placed after the phrase "and warrant title to the same", because it was intended to modify it. Alternatively, it could have been inserted there because the McCalebs wanted to make clear they intended to sever the minerals from the fee simple

title. . . . The deeds, therefore, are subject to two possible interpretations, i.e., that the McCalebs reserved the minerals for themselves, limiting the fee simple description by express words, or that they did not warrant the title to the minerals for reasons known only to them.

Because the deed was subject to two different interpretations, it contained an ambiguity requiring consideration of extrinsic evidence to determine the intent of the parties to the deed. The intent of the parties was a disputed issue of material fact which precluded summary judgment. Therefore, the Court reversed the summary judgment and remanded the matter for further proceedings consistent with its opinion. *Id.*, 976 P.2d at 1117.

¶ 6 On remand, the trial court held a bench trial on the issue of intent. The parties submitted a joint stipulation of facts, and each party put on one witness. Neal McCaleb testified he and his wife owned all the stock in Arrowhead and were responsible for all decision-making for the company. The purpose of Arrowhead was to acquire real estate and develop subdivisions. He said his employee prepared the subject deeds based on his instructions that he wanted to retain the minerals in the property, and he provided the language, "less and except all mineral interests." McCaleb testified it was not his intent for Arrowhead to acquire any of the minerals and he intended to convey only the surface to Arrowhead. He said he did not have advice of counsel in preparing the deeds.

¶ 7 McCaleb conveyed other tracts to other purchasers during this time period. Those deeds unambiguously reserved the minerals to the McCalebs. McCaleb said those deeds were prepared by closers working for title insurance companies.

¶ 8 McCaleb said he later sought financing from Liberty Bank to pay for subdivision improvements. As president of Arrowhead, he signed loan documents prepared by the bank. He said he made only a cursory review of the documents and did not bring an attorney to closing. As part of the transaction, the McCalebs conveyed the remaining tracts in the quarter section to Arrowhead in order to provide additional collateral. The deeds for those conveyances were prepared by the bank and conveyed both the surface and minerals. Arrowhead then mortgaged the combined tracts, including the ones at issue in this case, to secure the loan. It covenanted in the mortgage document that it was "seized of an indefeasible estate in fee simple in the Mortgaged Premises." McCaleb said he was a guarantor on the note. After he and Arrowhead defaulted on the note, he reached an agreement with the bank to convey the property to the bank in lieu of foreclosure. As president of Arrowhead, McCaleb signed a warranty deed, prepared by the bank, conveying the mortgaged premises to Liberty Bank. McCaleb agreed the deed on its face conveyed and warranted title to both the surface and minerals.

¶ 9 Petrocorp put on the testimony of the petroleum landman who obtained its leases on the disputed property. He traced the chain of title from Petrocorp's lessors to Liberty Bank and its deed in lieu of foreclosure from Arrowhead.

¶ 10 The trial court ruled the placement of the language, "less and except all minerals," immediately after the warranty clause created an uncertainty and therefore the deeds were ambiguous. It ruled that consideration should be given to the circumstances leading up to the execution of the deeds, including the subject matter of the deeds and the situation of the parties. The trial court found the intent of the grantor and grantee of the deeds was that the McCalebs would retain the minerals and only the surface would be conveyed to Arrowhead. It found the McCalebs reserved the minerals for themselves, limiting the fee simple description by express words. The trial court granted judgment in favor of Boswell, quieting title to the minerals in the McCalebs and to the leasehold in Boswell. Petrocorp appeals from the trial court's judgment.

I

¶ 11 Petrocorp's first contention of error is the trial court failed to follow the law of the case and did not follow the instructions of the prior appellate opinion. It argues the

Court's opinion in *Boswell I* specifically refused to state whether the words "less and except all mineral interests" were "apt words of reservation," and instead found only that the placement of those words following the warranty clause would not form the basis for a finding that the McCalebs intended to reserve the minerals. Petrocorp contends the trial court was required to determine whether "less and except all mineral interests" were "apt words of reservation" before it proceeded to the next step of interpreting extrinsic evidence of the McCalebs' intent.

¶ 12 The *Boswell I* opinion did not so instruct the trial court. The Court stated, "We must decide whether the McCalebs' use of the words, 'Less and except all mineral interests' in the two subject warranty deeds, are also 'apt words' of reservation to reserve the minerals in themselves." 976 P.2d at 1116. The Court did not then refuse to answer that question; rather, it resolved the issue by finding the deeds were subject to two possible interpretations. *Id.* Had the language not sufficed as apt words of reservation, only one interpretation would have been possible, i.e., that the deeds did not reserve the minerals. Because there was an ambiguity, the Court held there was a disputed issue of material fact and summary judgment was inappropriate. The trial court properly followed the law of the case when it held a bench trial on the disputed issue of material fact, whether the McCalebs intended to reserve the minerals.

## II

¶ 13 Petrocorp's next contention of error is the trial court's finding the McCalebs intended to reserve the minerals is clearly against the weight of the evidence. A quiet title action is of equitable cognizance. *Caywood v. January,* 1969 OK 87, 455 P.2d 49, 52. Therefore, we will examine the whole record and weigh the evidence, but will affirm the judgment of the trial court unless clearly against the weight of the evidence or contrary to law or established principles of equity. *Murdock v. Loeffelholz,* 1966 OK 242, 421 P.2d 236, 237.

¶ 14 The evidence to which Petrocorp points as establishing that McCaleb did not intend to retain the minerals includes (1) McCaleb executed other deeds with unambiguous reservation language before he signed the disputed deeds, and (2) as president of Arrowhead, McCaleb signed documents warranting Arrowhead owned the minerals. The implication McCaleb knew the language he placed in the deed was insufficient to reserve the minerals is controverted not only by his testimony he intended to reserve the minerals, but also by his testimony he provided the language without advice of counsel and the deeds with unambiguous reservations were prepared by professionals in the title business. We are unable to find the trial court's finding was against the clear weight of this evidence.

¶ 15 McCaleb's actions as president of Arrowhead in signing the mortgage and deed warranting title to the minerals occurred two years after he executed the disputed deeds. In interpreting an ambiguous conveyance, the court should consider each part of the deed and view it "in light of the circumstances attending and leading up to its execution, including the subject-matter and situation of the parties as to the time of the deed's execution." *Messner v. Moorehead,* 1990 OK 17, 787 P.2d 1270, 1272. As in *Messner,* the trial court here correctly disregarded evidence of "subsequent acts and transactions made by the grantors and grantee." *Id.* at 1273.

## III

¶ 16 Petrocorp's last contention of error is the trial court's rejection of the bona fide purchaser for value defense is against the clear weight of the evidence. It argues its lessors are bona fide purchasers for value without notice of the disputed mineral interest claimed by the McCalebs because McCaleb signed Arrowhead's warranties of title. Petrocorp asserts its lessors were not on inquiry notice of the McCalebs' claim because (1) there was not total absence of title in Arrowhead as vendor, (2) at the time the lessors acquired their title, the language in the disputed deeds was not "apt words of reservation," and (3) the land records reveal

no evidence McCaleb intended to reserve the minerals.

¶ 17 The elements essential to being a bona fide purchaser of an interest in land are (1) the payment of valuable consideration, (2) good faith and the absence of purpose to take an unfair advantage of third persons, and (3) absence of actual or constructive notice of outstanding rights of others. *Big Four Petroleum Co. v. Quirk*, 1988 OK 21, 755 P.2d 632, 634. A purchaser of land takes the property with constructive notice of whatever appears in the conveyances constituting the chain of title. *Creek Land & Imp. Co. v. Davis*, 1911 OK 85, 28 Okla. 579, 115 P. 468. If those documents present sufficient facts to put a prudent person on inquiry, the purchaser will be charged with actual notice of whatever reasonable inquiry would have disclosed. *Creek Land & Imp. Co. v. Davis*, 1911 OK 85, 28 Okla. 579, 115 P. 468.

¶ 18 Petrocorp cites *Noble v. Kahn*, 1952 OK 42, 206 Okla. 13, 240 P.2d 757, for the proposition that "[t]he only time that the doctrine of bona fide purchaser for value without notice is unavailable is when there is a 'total absence' of title in a vendor." The case actually states the converse proposition: "The doctrine of bona fide purchaser without notice does not apply where there is a total absence of title in the vendor. The good faith of a purchaser cannot create a title where none exists." *Id.* at 759. The Court noted the purchaser was charged with notice of defects on the face of the record. Boswell did not need to show the total absence of title in Arrowhead to defeat the good faith purchaser defense; it only needed to show the chain of title would put purchasers on notice of the McCalebs' claim.

¶ 19 The opinion of the Court of Civil Appeals in *Boswell I* did not represent a change in Oklahoma law. The Court based its ruling, that the controlling factor as to whether a deed reserved the minerals was the intent of the parties and not the precise location of the exception, on the Oklahoma Supreme Court's opinion in *Westcott v. Bozarth*, 1949 OK 237, 202 Okla. 149, 211 P.2d 258. In that case, the Court ruled a clause found in the habendum clause immediately after the warranty clause was an effective reservation of the minerals by the grantor because it contained apt words of reservation. The *Boswell I* Court applied *Westcott v. Bozarth* in holding the language in the disputed deeds was ambiguous and could be interpreted in two possible ways. *Westcott v. Bozarth* was existing law at the time the disputed deeds and subsequent deeds were executed. Therefore, at the time Petrocorp's lessors acquired their title, the reservation language in the disputed deeds could be interpreted as reserving the minerals to the McCalebs. Such language would put a reasonable person on inquiry.

¶ 20 Petrocorp's third argument, that the land records reveal no evidence McCaleb intended to reserve the minerals, was resolved by the law of the case. The land records reveal language capable of being construed as a reservation of minerals. Petrocorp's lessors were charged with constructive notice of that language. The actual construction of the language must be based on the intent of the grantor and grantee. Reasonable inquiry would have revealed that intent. Therefore, Petrocorp's lessors were not good faith purchasers without notice of the McCalebs' claim. The trial court did not err in rejecting the bona fide purchaser defense.

¶ 21 For the foregoing reasons, the judgment of the trial court is AFFIRMED.

JOPLIN, J., and MITCHELL, P.J., concur.